In re the MARRIAGE of Aurelia V. Conley and John R. CONLEY.

Upon the Petition of Aurelia V. Conley, Appellant,

And Concerning John R. Conley, Appellee.

No. 62214.

Supreme Court of Iowa.

Oct. 17, 1979.

James W. Redmond of Gleysteen, Harper, Eidsmoe & Heidman, Sioux City, for appellant.

Patrick N. Murphy of Dull Law Firm, Le Mars, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and LARSON, JJ.

McCORMICK, Justice.

Petitioner Aurelia V. Conley contends the trial court incorrectly valued the assets of the parties, failed to consider a prospective corn crop, and erred in refusing to award her interest on installment payments ordered as part of the property division in this dissolution action. We find the valuations were accurate and the corn crop went with the farm, but hold interest should have been awarded on the installment payments. We modify and affirm the decree.

Respondent John R. Conley is a veterinarian in Le Mars. He and Aurelia had been married twenty-four years at the time of trial. They had six children, two of whom still lived at home.

The parties accumulated substantial assets during the marriage. John practiced in a professional corporation and owned one-half its stock. The parties owned the office building in which the corporation was housed, their home, household goods, life insurance, a 285-acre farm, machinery and livestock.

Shortly before trial, Aurelia inherited an undivided one-half interest in 110 acres of Greene County farmland from her mother. The land was estimated to be worth at least $2,000 an acre. However, the inheritance was subject to probate proceedings and possibly a partition action. It is nevertheless a factor to be considered in adjudicating the property rights of the parties in this case. *See In re Marriage of Locke*, 246 N.W.2d 246, 252–53 (Iowa 1976).

The trial court found there should be an approximately equal division of the marital assets, exclusive of Aurelia's inheritance. For that purpose, the court valued John's stock in the corporation at $24,700, the office building at $54,250, the home at $83,750, the household goods at $8,625, John's life insurance at $22,780, Aurelia's life insurance at $4,320, the farm at $249,000, machinery at $9,000, and the livestock at $20,750. The home was subject to a $26,000 mortgage and the farm to a $108,000 mortgage. The parties owed $28,500 on a bank note.

John was awarded the stock, office building, his life insurance, the farm, machinery, and livestock. He was ordered to pay the bank note. According to the trial court's computations, John would receive net assets worth $243,980, after subtraction of that debt. Aurelia was awarded the home, the household goods, her life insurance, and her inheritance. Under the trial court's figures, she would receive net assets, exclusive of her inheritance, worth $66,695.

In an effort to equalize the property division, the court ordered John to pay Aurelia $90,000. However, because of the illiquidity of his assets, he was to pay the sum in nine equal installments over a nine-year period, without interest.

John was also ordered to pay alimony of $500 per month and child support of $200 per month per child. Those awards are not in controversy.

*I. The valuations.* Aurelia contends the trial court undervalued the stock of the professional corporation, the office building, and the farm, and overvalued the household goods. Each party offered some evidence of the value of these items, and the trial court adopted values between their estimates.

The stock in the professional corporation had a book value of $11.36 per share, making John's 2500 shares worth $28,400 on that basis. However, the corporation was involved in litigation in which the owner of the remaining 2500 shares was seeking to force liquidation of his interest. John testified this factor depressed the value of his stock to $19,000 to $21,000.

The value of stock in a closely held corporation is at best difficult to determine. We discussed the relevant principles in *In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979). Applying them here, we believe the value of $24,700 placed on John's stock by the trial court was a fair estimate of its intrinsic value for purposes of this case.

In placing a value of $54,250 on the office building, the court adopted a figure closer to a real estate appraisal of $58,500 offered by Aurelia than to the $40,000 to $50,000 valuation estimated by John. According to John, three realtors had appraised the building at $42,500 three years earlier, but he acknowledged its value had inflated since then. No evidence was offered by which the accuracy of the appraisals could be analyzed. Under this record, we find the trial court's valuation was reasonable.

We have a similar situation regarding the valuation of the farm. Aurelia introduced the result but not the basis of an appraisal which put its value at $270,000. John relied on a financial statement prepared by his bank which placed the value at $228,000. The middle ground adopted by the trial court in fixing the value at $249,000 does not appear to be out of line.

We reach the same conclusion regarding the valuation of household goods. Aurelia's appraisal figure of $4,250 did not include several major appliances and other items. John's estimate of $13,000 was admittedly inflated by a sentimental factor. The trial court's figure of $8,625 is a reasonable compromise.

We believe the valuations used by the trial court were reasonable, considering their purpose and the quality and quantity of the evidence upon which they were based. *See Petition of Fenchel*, 268 N.W.2d 207, 209–10 (Iowa 1978).

■ *II. The 1978 corn crop.* Aurelia contends the trial court failed to decide what should be done with the 1978 corn crop. However, the decree was entered in June 1978 while the crop was still growing. It was part of the land, so when John was given the land he was also given the crop. *See Clark v. Strohbeen*, 190 Iowa 989, 994, 181 N.W. 430, 433 (1921). Because John depended on income from the farm to make the farm mortgage payments, we believe the trial court was justified in permitting him to keep the crop.

*III. Interest on the installment payments.* After carefully considering the question, the trial court decided not to allow Aurelia any interest on the installment payments which John was ordered to pay over a nine-year period. The court reasoned that this was desirable to help John keep the farm and meet his other periodic obligations.

The effect of this provision was not merely to give John the use of the money for a longer period of time, which was the trial court's intention. The property division also had the effect of giving John all of the income-producing property of the parties except for Aurelia's inheritance, which would probably be tied up in probate proceedings for some time. Furthermore, the farm and commercial building are the kind of investments which traditionally are an effective hedge against inflation. In contrast, the interest-free installment award to Aurelia is the kind of asset which is most susceptible to the ravages of inflation.

As a result, the property division fell substantially short of the trial court's goal of an approximately equal division of the assets exclusive of Aurelia's inheritance. The parties do not quarrel with the goal, and we agree it was justified under the criteria in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), excluding those based on fault. *See In re Marriage of Williams*, 199 N.W.2d 339, 344–45 (Iowa 1972). Particularly significant here are the length of the marriage and the equal efforts of the parties in raising a family and acquiring the marital property.

■ In determining the equity of the property division, we also consider the $500 per month award of periodic alimony. *See In re Marriage of Cooper*, 225 N.W.2d 915, 919 (Iowa 1975). Aurelia was not working outside the home and had no special employment skills or prospects, although she was attending college in an effort to increase her employability. John's income from his veterinary practice approximated $40,000 per year when earnings retained by the corporation are taken into account. His alimony obligation is relatively modest. It provides no basis for tempering the trial court's goal of an approximately equal division of property.

■■ In evaluating the method chosen by the court to accomplish its objective, we recognize that equality need not be achieved with "mathematical exactness." *In re Marriage of Andersen*, 243 N.W.2d 562, 564 (Iowa 1976); *see In re Marriage of Briggs*, 225 N.W.2d 911, 913 (Iowa 1975). However, while we agree the trial court's objective was equitable in the present case, we are convinced the means of achieving it was not.

This case differs in one important respect from *Andersen* and *Briggs* in which we approved substantial disparity in property division despite stated goals of equality. In both of those cases the principal asset of the parties was farmland which was a major source of the parties' livelihood. The desirability of preserving this asset widened the range of acceptable departure from approximate equality of property division. In the present case, John's veterinary practice is the source of the parties' livelihood. The farmland is an investment. As such, it may well be expected to bear some of the burden of an equitable property division. We also note that interest was allowed on the unpaid balance of the installment award in *Andersen*. *See* 243 N.W.2d at 563.

We think the unpaid installments of the cash award to Aurelia should bear interest at the legal rate. Therefore we modify the decree to provide that interest on the unpaid balance of the award shall accrue at the rate of seven percent per annum from and after September 1, 1978. The $10,000 payment which was due September 1, 1979, shall be credited first against interest and then against principal. The remaining seven installments shall be equal with each other in amount, including principal and interest, also to be credited first against accrued interest. On this basis, each annual installment commencing September 1, 1980, shall be in the amount of $14,027.82. As provided in the decree delinquent installments shall bear interest at the annual rate of nine percent. Unpaid installments shall be a lien against John's farm. However, Aurelia shall execute any instrument necessary to subordinate this lien to any encumbrance which is placed on the farm by John to enable him to make the installment payments. Except as modified, the provisions of the decree are affirmed.

*IV. Attorney fees.* Aurelia has applied for an award of attorney fees for this appeal. It is accompanied by an itemized statement showing services and expenses. Without fixing the amount of the fee, we order that John pay $1,250 toward it. Costs of the appeal are taxed to John.

MODIFIED AND AFFIRMED.