# IN THE SUPREME COURT OF IOWA

No. 130 / 05-1257

Filed February 9, 2007

**IN RE THE MARRIAGE OF JODY L. KEENER
AND CONNIE H. KEENER**

**Upon the Petition of
JODY L. KEENER**,

      Appellant,

**And Concerning
CONNIE H. KEENER**,

      Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Marsha Beckelman, Judge.

Former wife seeks further review after court of appeals modified dissolution decree. **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Robert F. Wilson, Cedar Rapids, for appellant.

Daniel Bray of Bray & Klockau, P.L.C., Iowa City, for appellee.

**STREIT, Justice.**

When two people cannot get along, sometimes it is better for both of them to just pick up their toys and leave. Unfortunately in this case, that was not so easy. During their marriage, Jody and Connie Keener founded a very successful toy company. The district court awarded all of the stock in the company to Connie but required her to pay Jody nearly $7 million over eleven years in order to equalize the property division. Jody complained the court should have awarded interest and provided security for this judgment. The court of appeals agreed, awarding Jody interest at the statutory rate and giving him an equitable lien on the business and all of its assets. On further review, we find Jody did not prove the value of certain intangible assets of the corporation. We find the value of the corporate stock to be $10,169,171 and order Connie to pay Jody $4,280,650 over six years. We further order interest be paid on the judgement rendered herein and Connie's obligation to her ex-husband be secured by a UCC lien on the corporate stock.

## I.     Facts and Prior Proceedings

Connie and Jody were married in 1992 in Cedar Rapids, Iowa. They do not have any children together. Jody filed for dissolution in 2002.

Connie is fifty-eight years old. She was born in Hong Kong and lived there until she came to the United States in 1975. In Hong Kong she worked as a cashier, in hotel management, in the travel agency business, in an employment agency, and finally at a bank. While living in California, she worked as a secretary and a commercial bank loan assistant. She has two children. This is her second marriage.

Jody is fifty-two years old and a native of Iowa. He has five children and this is his third marriage. Jody has an unusual

background. He quit school at the age of twelve to work for various carnivals. While in the carnival business, Jody began buying and selling closeout toys and furniture. He left the carnival business around the age of twenty and began manufacturing and distributing furniture. In 1988, Jody was charged with and pled guilty to felony conspiracy to defraud the United States and two violations of misdemeanor willful failure to file federal income taxes for 1981 and 1982. While in prison, Jody completed his GED. Upon his release in May 1991, Jody worked for the Dove Imports company which was formed by a group of pastors and friends in Marion, Iowa. The business bought and sold furniture and toys.

While on a business trip to California for Dove Imports, Jody met Connie. After a short courtship, Connie moved to Cedar Rapids, the two were married, and they started their own business. In July 1992, the day before they were married, Jody and Connie incorporated Alpha International. Connie was the sole shareholder.[1] However, the business was their joint venture from the beginning. Jody was responsible for purchasing merchandise, sales, marketing, contract negotiations, and arranging toy manufacturing. Connie was involved in the financial aspects of the business—invoicing, writing checks, keeping the books and tracking finances. The company started in the couple's garage but grew rapidly and became very successful. At its peak, Alpha employed approximately one hundred people. Originally, Alpha was primarily involved in the wholesale distribution of closeout toys and collectibles. After acquiring two other companies, Alpha began manufacturing and designing toys as well. During their marriage, the Keeners purchased a

---

[1]Jody and Connie put all of their assets in Connie's name in order to avoid Jody's creditors.

great deal of real estate, all of which was placed in Connie's name alone. Alpha does not own any real estate although it rents office and warehouse buildings from Connie.

In late 2001, the Keeners began experiencing marital difficulties. In May 2002, Alpha's board fired Jody. Thereafter, Jody reactivated and incorporated a company called J. Lloyd International. J. Lloyd is in the business of reselling closeout inventories and also consults on toy manufacturing.

Trial was held between March 23, 2004 and April 8, 2004. The district court issued its dissolution decree on March 14, 2005. The value of Alpha was the biggest point of contention. The district court valued Alpha at $15,169,171 and awarded the business to Connie. The court awarded Connie all of the real estate used by Alpha. The district court valued J. Lloyd at $1 million and awarded it to Jody. Connie also received the marital home. Jody was awarded most of the remaining real estate.

The property division was heavily skewed in Connie's favor. Connie received $18,086,095 in property whereas Jody's property award was worth $4,524,786. Thus, "[i]n order to equalize the property division," the district court ordered Connie to pay Jody $6,780,650 in installments. The court ordered Connie to pay Jody $600,000 per year by May 1 of each year beginning in 2006, until the amount is paid in full.

Both parties filed motions to enlarge. In response, the court clarified its characterization of the payments Connie owes Jody by amending the decree with this additional language:

> Because the total judgments ordered herein to be paid by Connie Keener to Jody Keener involve periodic payments, judgments for the periodic payments, as ordered by the court, will become judgments of record as the periodic

payments (or installments) are due. [Jody] shall be paid judgment interest on due and unpaid installments.

The court otherwise denied Jody's request for interest on the $6,780,650. The district court refused Jody's request for a lien on Alpha and the company's assets. The court also declined Connie's request to lower its valuation of Alpha.

Both parties appealed. Jody argued for interest and security on the payments Connie owes him. Connie argued the district court overvalued Alpha. The court of appeals ruled in Jody's favor. It concluded the cash payments to Jody from Connie should bear annual interest from the date of the decree at a rate set by Iowa Code sections 535.3(1) and 668.13(3) (2005), "because Jody will otherwise be inequitably deprived of the use of his payments equalizing the property division." The court of appeals also concluded "it is inequitable to deny Jody's security in the property division" and granted an equitable lien against Alpha and its corporate assets. The court denied Connie's request to decrease the valuation of Alpha and increase the valuation of J. Lloyd. On further review, Connie argues (1) the trial court's valuation of Alpha is in part "speculative in nature," (2) an equitable lien is inappropriate in this case, (3) interest on the cash award is also inappropriate, and (4) the court of appeals erred by not considering the tax consequences caused by the equitable lien and interest award.

## II. Scope of Review

We review dissolution cases de novo. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). " 'Although we decide the issues raised on appeal anew, we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses.' " *Id.* (quoting *In re Marriage of Witten,* 672 N.W.2d 768, 773 (Iowa 2003)).

### III.    Merits

Iowa is an equitable distribution state.  *Id.* (citing *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).   This means our courts equitably divide all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse.  *Id.*; *see* Iowa Code § 598.21.   Courts determine what is fair and equitable based on the particular circumstances of the parties.   *Schriner*, 695 N.W.2d at 496.   The Iowa Code provides a list of factors that must be considered.   *See* Iowa Code § 598.21(1).   "Although an equal division is not required, it is generally recognized that equality is often most equitable."  *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005) (citing *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979)).

Before dividing the marital property, a court must identify all of the assets held in the name of either or both parties as well as the debts owed by either or both of them.  *In re Marriage of Hagerla*, 698 N.W.2d 329, 333 (Iowa Ct. App. 2005).   The assets should then be given their value as of the date of trial.  *Id.*  "The purpose of determining the value is to assist the court in making equitable property awards and allowances." *In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979).

As we have already alluded, the parties owned substantial assets (with some corresponding debts) which were divided by the district court. For purposes of this appeal, we need not detail each asset.   The important thing is each party was awarded property worth approximately $11,305,400 taking into account the cash award Connie is to pay Jody. We agree with the district court it was equitable to divide the property equally because both parties were instrumental in making Alpha a success.  We now turn to the issues Connie raises on further review.

## A.     Valuation of Alpha

Each party had an expert testify regarding the value of Connie's stock in Alpha[2]—Shannon Shaw, C.P.A. for Connie and accredited senior appraiser Wayne Brown for Jody.  Both concluded the appropriate method for valuing the stock was the asset approach.  Both assessed Alpha's worth as a going concern, meaning the business would stay in operation as opposed to being ordered to dissolve and liquidate.  The district court found Brown's testimony much more credible than Shaw's.

The district court adopted Brown's opinion of the value of Alpha's tangible assets, which was $10,169,171.  Connie does not dispute this valuation.  However, she argues the district court's valuation of Alpha's *intangible* assets (i.e. trademarks and other intellectual property rights) is "speculative" and "beyond the evidence of the record."  Alpha owns approximately one hundred trademarks, most of which were acquired when Alpha purchased the assets of Empire of Carolina, Inc. at a bankruptcy court auction.  At trial, Connie's expert, Shaw, testified these trademarks had no value.  Jody's expert, Brown, on the other hand, testified these trademarks had significant value and the district court agreed.  Prior to trial, Alpha sold one trademark, "Buddy L," for $7.7 million and another trademark, "Yo-Yo Balls," for $475,000.

The district court relied on rough justice to determine the value of Alpha's intangible assets.  Brown was unable to offer a firm opinion on the value of Alpha's intangible assets because he had not received financial documentation to review.  Using the "Buddy L" sale as a guide, Brown estimated the remaining trademarks were worth between $20 million and $30 million.  Jody offered a similar estimate.

---

[2]The district court valued 100% of the stock in Alpha and refused to take into account the fact Connie gave .5% of her ownership interest to her son after Jody filed for dissolution.  We agree it was appropriate to ignore Connie's gift to her son.

The district court determined the value of Alpha's trademarks and other intangibles to be $5 million.[3] The district court combined the value it assigned to Alpha's tangible assets with the value it assigned to Alpha's intangible assets in order to determine Connie's stock was worth $15,169,171.

The district court was placed in the unenviable position of determining Alpha's value. We have previously said, the "market value for the stock in a closely held corporation can rarely be ascertained." *In re Marriage of Moffatt*, 279 N.W.2d at 19. Because of the difficulty surrounding valuation, appellate courts give much leeway to the trial court. *In re Marriage of Steele*, 502 N.W.2d 18, 21 (Iowa Ct. App. 1993) (citing *In re Marriage of Dennis*, 467 N.W.2d 806, 808 (Iowa Ct. App. 1991)). A trial court's valuation will not be disturbed when it is within the range of evidence. *See In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987). Moreover, appellate courts defer to a trial court's valuations when accompanied by supporting credibility findings or corroborating evidence. *In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999).

Based on the testimony at trial, it appears Alpha's intangible assets have at least some value. Connie testified these assets are crucial to the future success of the company. She conceded the intangible assets Alpha acquired from Empire will probably add value to Alpha in the future.

Although Alpha owns many trademarks, the testimony at trial focused on the value of "Grand Champions" and "Big Wheels." Since 2003, Alpha has been marketing toys under both names. Additionally,

---

[3]The district court did not articulate the basis for this figure. Although not necessary, it would have been helpful if the court had explained how it arrived at $5 million.

Alpha is developing new product lines under those names. Moreover, the company is pursuing litigation in an effort to protect both brands. One lawsuit concerns trademark and trade dress infringement of "Grand Champions." The other alleges a company stole some of the "Big Wheels" tooling prior to Alpha acquiring Empire's assets. This evidence supports Jody's contention the intangible assets have value because Alpha would not expend significant resources if these brands are worthless.

However, the record lacks sufficient evidence concerning a specific dollar amount to attach to these assets. Jody acknowledges "[t]he inadequacy of the record" with respect to the value of Alpha's intangible assets. Connie's expert testified the intangible assets had no value. Jody's expert stated the intangibles had value but could only offer a haphazard guess on valuation based on the fact Alpha sold *other* trademarks for considerable money.

Eric Deininger, a business consultant for Alpha, testified he would not recommend Alpha sell "Grand Champions" for $5 million. When pressed, he explained:

> I believe [Grand Champions] has potential. If we can build back the customer base that it once had, it has potential to be earning very solid revenues.

Based on this testimony, it is fair to say Deininger believes "Grand Champions" may *in the future* be worth in excess of $5 million *if* Alpha successfully revitalizes the brand. The deficiency here is he was never asked the essential question—what is "Grand Champions" worth now? He simply opined "Grand Champions" may be valuable to Alpha in the future. He was never asked to give his opinion of the present fair market value and we cannot infer such information. Without more, Deininger's

testimony is not enough to determine the fair market value of "Grand Champions" at the time of trial.

Similarly, Jody's testimony is insufficient to uphold the district court's $5 million valuation of Alpha's intangible assets. Although not an owner of Alpha, Jody is certainly qualified as an expert in the toy business. For his testimony to be considered sufficient evidence, it must be more than mere conjecture. Jody made a conclusory statement Alpha's intangible assets are worth between $25 million and $30 million. He testified he was offered $4.5 million for "Grand Champions" while still working for Alpha. He also claimed another toy company offered Alpha $5 million for "Grand Champions" trademark and $2 million for Alpha's "Grand Champions" inventory. However, he made no attempt to substantiate these claims or use this information in determining today's fair market value. Jody says with pride "there is always money in confusion." While Jody's fast moving, unorthodox style may suit him well in the business world, the courtroom is no place to make money "in confusion."

This anecdotal evidence is simply an insufficient basis upon which to determine fair market value. Alpha's intangible assets—particularly "Grand Champions" and "Big Wheels"—likely have present value and consequently add to the value of Connie's stock. Unfortunately, there is a lack of proof in this case. There is not adequate evidence in the record to measure the fair market value of Alpha's intangible assets. The district court erred by speculating as to the value of these assets. Accordingly, we reduce the value of Connie's Alpha stock to $10,169,171.

After taking into account this reduction, Connie owes Jody $4,280,650 in order to equalize the property division. Because this amount is considerably less than the amount awarded by the district

court, Connie should be given less time to pay Jody. We believe six years is fair and equitable to both parties. We therefore order Connie to pay Jody a minimum of $725,000 principal plus interest per year commencing on May 1, 2006 until the $4,280,650 judgment is paid. She shall be given credit for any amounts previously paid.

### B. Interest

The court of appeals found "not allowing interest from the date of the decree on such a large distribution spread over ten or more years is not equitable to Jody." Although we have reduced both the amount of the cash award and the length of repayment, we nevertheless agree interest is appropriate in this case.

Interest may not be necessary in every case, but it certainly is here. *See In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979) (holding district court's failure to award interest on $90,000 award which was to be paid over nine years unfair because "the property division fell substantially short of the trial court's goal of an approximately equal division of assets"); *In re Marriage of Briggs*, 225 N.W.2d 911, 913 (Iowa 1975) (affirming no interest on cash award of $50,000 over an eleven-year period because lack of interest was a factor the district court considered in determining the amount). The district court intended an equal property division. However, the court did not consider the time value of money in determining Jody's interest-free cash award. Consequently, Jody was given a much smaller award than Connie in contradiction to the district court's stated goal of equal property division.

We hold the $4,280,650 cash award to Jody shall bear 5.03% in annual interest from March 14, 2005, the date of the original dissolution decree. *See* Iowa Code §§ 535.3(1), 668.13(3). This interest shall be paid annually in addition to any principal paid.

**C.    Security**

The court of appeals found it inequitable to deny Jody security for the money Connie owes Jody.  It granted an equitable lien against Alpha and all of its corporate assets.  An equitable lien may be created when the predicate conditions for a judgment lien do not exist.  Under Iowa Code section 624.23, judgments are automatic liens against the real estate owned by the judgment debtor.  A judgment lien requires a final, valid and subsisting judgment by a duly authorized court for payment of a defined and certain amount.  *Schuling v. Tilley*, 454 N.W.2d 899, 900 (Iowa Ct. App. 1990) (citing *Slack v. Mullenix,* 245 Iowa 1180, 1184, 66 N.W.2d 99, 101 (1954)).  Orders under a dissolution decree, if sufficiently defined and certain, are considered judgments and attach to real property as provided by section 624.23.  *Baratta v. Polk County Health Servs., Inc.,* 588 N.W.2d 107, 110–11 (Iowa 1999).

The original decree satisfied the requirements for a judgment lien.  It stated:

> In order to equalize the property division, Connie Keener shall pay Jody Keener a total of $6,780,650.00.    This *judgment* in Jody's favor shall not carry interest.  Connie shall pay Jody $600,000 per year by no later than May 1st beginning in the year 2006, until such time as the *judgment* is paid in full.

(Emphasis added.)  The quoted language provided a final judgment for a sum certain.  Thus, Jody would have had a judgment lien against Connie's real property.  The dissolution decree awarded Connie $2.06 million in real estate.

The district court subsequently modified the decree so Jody only has a judgment for each $600,000 payment as it becomes due.  The district court added the following language:

> Because the total judgment ordered herein to be paid by Connie Keener to Jody Keener involve periodic payments, judgments for the periodic payments, as ordered by the court, will become judgments of record as the periodic payments (or installments) are due.

We think Jody is entitled to a judgment lien for the entire amount Connie owes him. We therefore remand this case to the district court so the language added to the decree via the July 5, 2005 order can be stricken. Jody will then have a judgment lien on Connie's real estate as provided by Iowa Code section 624.23.

The judgment lien awarded to Jody shall be subordinate to any refinancing on any real estate subject to the judgment lien if the refinancing is for an amount equal to or less than the existing mortgage balance. Connie shall inform Jody in writing of any refinancing that occurs. If necessary, Jody shall execute and deliver to Connie any documents required to subordinate the judgment lien under the provisions of this paragraph.

We now consider the appropriateness of an equitable lien. The court of appeals gave Jody an equitable lien against Alpha and its corporate assets. An equitable lien "is a right not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the payment of a particular debt or class of debts." *Smith v. Village Enters., Inc.*, 208 N.W.2d 35, 38 (Iowa 1973) (quoting 51 Am. Jur. 2d *Liens* § 22 (1970)). In other words, an equitable lien may be created when the predicate conditions for a judgment lien do not exist or where the debtor does not own sufficient real estate to satisfy the debt. An equitable lien merely requires a debt, a duty of one person to pay another person, and a res to which that obligation attaches. *Fed. Land Bank of Omaha v. Boese*, 373 N.W.2d 118, 121 (Iowa 1985) (quoting 53 C.J.S. *Liens* § 4(a) (1948)). Equitable liens may be placed on both real and

personal property. *See Nelson v. Pampered Beef-Midwest, Inc.*, 298 N.W.2d 281, 286 (Iowa 1980) (holding unsecured creditors had equitable lien which followed personal and real property into the hands of newly formed corporation); *In re Marriage of Blume*, 473 N.W.2d 629, 634 (Iowa Ct. App. 1991) (upholding equitable lien on farm). In contrast, a judgment lien only attaches to real property.

On further review, Connie overreacts to the court of appeals creation of an equitable lien. She claims "attach[ing] an equitable lien to the business assets of a company is to place the creditor in full control of the company" and prohibits a company from even "paying a UPS driver or its employees."

Connie's concerns are unfounded. Contrary to Connie's assertions, an equitable lien does not affect arms-length transactions made in the regular course of business. *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223, 229, 118 N.W. 456, 458 (1908); *accord Nachazel v. Mira Co. Mfg.*, 466 N.W.2d 248, 253 (Iowa 1991); *Nelson*, 298 N.W.2d at 285–86; *Smith*, 208 N.W.2d at 39–40. Connie's misunderstanding may be due to the nebulous nature of an equitable lien, which is perhaps best suited for unjust enrichment situations. *See Nachazel*, 466 N.W.2d at 253. Nevertheless, a district court in a dissolution case has the authority to secure future performance by imposing an equitable lien. *In re Marriage of Hettinga*, 574 N.W.2d 920, 923 (Iowa Ct. App. 1997).

While an equitable lien is certainly appropriate in this case, we find a UCC lien to be a better mechanism to secure Jody's judgment under these circumstances where the main asset is corporate stock. *See generally Siragusa v. Brown*, 971 P.2d 801 (Nev. 1998). We therefore order Connie to execute all necessary papers to give Jody a lien in accordance with Iowa Code chapter 554. The lien shall only be against

Connie's Alpha stock. The court of appeals erred by creating a lien against Alpha and its assets because Connie only owns stock in the company.

The district court gave Connie the opportunity to pay Jody over time so she could continue to run Alpha as opposed to selling the business. However, if Connie does not make timely payments, then Jody is entitled to some recourse so he does not have to wait indefinitely for money that is rightly his. If Connie decides to sell her stock or discontinue the company's operation, we see no reason to delay Jody receiving his money. Thus, we find an acceleration clause to be appropriate. On remand, we direct the district court to add the following clause to the decree:

> Jody may elect to declare the whole amount due and collectible at once and proceed in any manner authorized by law to enforce the collection of the full balance declared due if any one of the following occurs: (1) Connie is more than one hundred and twenty (120) days late on any payment (including paying less than the amount owed), (2) Connie sells a controlling interest in Alpha (more than 50% of Alpha's stock), (3) Connie dissolves or liquidates the corporation, or (4) Connie otherwise jeopardizes Jody's security or secured interest.

This acceleration clause shall become effective May 1, 2008 in order to allow Connie time to catch up on her payments.

### D. Tax Consequences

Finally, Connie argues the court of appeals erred by "not consider[ing] the tax consequences to each party caused by [an] equitable lien and interest award." Indeed, tax consequences are among the litany of things a court shall consider when dividing marital property. *See* Iowa Code § 598.21(1)(*j*); *see also In re Marriage of Hogeland*, 448 N.W.2d 678, 680–81 (Iowa Ct. App. 1989) (holding income tax consequences of sale

should have been considered by trial court where payment of lump sum of cash to wife would in all probability require liquidation of capital assets). However, Connie did not raise this issue before the district court, the court of appeals, or herein with much specificity, despite Jody's request for interest and security in all courts. Connie therefore failed to preserve this issue for our review or has waived it. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) (holding "we will not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the *only* ground available to uphold a district court ruling").

### IV.  Conclusion

This is a somewhat unusual case. During their marriage, the parties were able to create a substantial amount of wealth in a relatively short period of time through their toy company. Because Connie was given all of the stock in the business, the district court ordered her to pay Jody $6,780,650 in order to equalize the property division. We find the district court's valuation of Alpha's stock was not supported by the evidence adduced at trial and reduce Jody's judgment to $4,280,650. Interest and an acceleration clause are ordered. Instead of the equitable lien created by the court of appeals, we find the combination of a judgment lien and UCC lien to be more appropriate. We remand to the district court so the decree may be modified to reflect our changes.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Wiggins, J., who concurs in part and dissents in part, and Hecht and Appel, JJ., who take no part.

**WIGGINS, J. (concurring in part and dissenting in part)**.

I dissent only from the part of the decision allowing Connie's real estate debt to remain superior to Jody's judgment lien in the event of refinancing. I do so for two reasons. First, Connie provided no evidence that her ability to refinance is impaired by the judgment lien. Second, because Jody has no right to control the terms and conditions of any refinancing, his security is in jeopardy.