# IN THE COURT OF APPEALS OF IOWA

No. 21-1877
Filed February 22, 2023

IN RE THE MARRIAGE OF CHRISTOPHER N. RUHLAND
AND SHAUNA L. RUHLAND

Upon the Petition of
CHRISTOPHER N. RUHLAND,
        Petitioner-Appellee,

And Concerning
SHAUNA L. RUHLAND, n/k/a SHAUNA L. HONN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott,

Judge.


        Shauna Honn appeals the property division provisions of the parties'

dissolution-of-marriage decree.  **AFFIRMED**


        John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

        Glenn Metcalf of Metcalf & Beardshear, Moville, for appellee.


        Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

The district court dissolved the 2016 marriage of Shauna Honn (f/k/a Shauna Ruhland) and Christopher Ruhland via a dissolution-of-marriage decree following trial in 2021. The decree divided the parties' assets and debts. It also required Christopher to pay an equalization payment to Shauna of $23,170 after awarding the family house and business to Christopher. Shauna appeals. She asserts that the court misvalued the house and business and, if those assets were accurately valued, she should receive an equalization payment of $174,207.

I.      **Standard and Scope of Review**

We review dissolution-of-marriage actions de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *Id.* We are not bound by the district court's findings, but we will only disturb its ruling if we find it failed to do equity. *Id.* Additionally, we will affirm the court's valuation of assets if it is within the range of permissible evidence. *Id.* at 679.

II.     **Analysis of the Property Division**

In dissolution-of-marriage cases, marital property is to be divided equitably after considering the factors listed in Iowa Code section 598.21(5) (2019). *Id.* at 678. A court's task is to identify and value all property subject to division. *Id.* Here, the district court did just that. The division resulted in an unequal and inequitable division in Christopher's favor, so the district court ordered an equalization payment to balance the scales. We are asked to review the equalization payment calculation.

The equalization payment of $23,170 ordered by the district court was calculated by adding together three determined values: (1) $3800 for Shauna's share of the marital equity in the house awarded to Christopher; (2) $15,000 for Shauna's share of the equity in the construction business awarded to Christopher; and (3) $4370 owed to Shauna to equalize the values of all other assets and debts divided between the parties. Neither party disputes the values, division, or equalization payment amount regarding the all-other-assets-and-debts division (i.e., the third of the listed calculations). Nor does either party dispute the decision to award the house and construction business to Christopher along with the responsibility for the debts associated with those assets. The rub comes with respect to the valuation of those two assets.

### A. The House

The issue over the value of the house is complicated in two ways. First, Christopher owned the house before the marriage. Second, the parties dispute its value.

As to the premarital issue, we note that the premarital nature of the house, or the equity in it, does not preclude division of the house as marital property. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007). Instead, the premarital nature of the property is merely one factor to consider in the property division. *Id.* The district court recognized this principle and decided that Shauna should receive some share of the equity in the house, especially in light of her contribution—both by her labor and her investment of premarital funds—toward improvement of it. Christopher purchased the house in 2002, fourteen years before the parties married. Based on the length of time Christopher owned the

house before the parties married, coupled with the respective contributions the parties made, the court determined that twenty percent of the equity in the house should be considered marital property, so Shauna should receive one-half of that marital property (i.e., ten percent of the equity in the house). Based on our de novo review, we find no inequity in this reasoning or calculation. *See McDermott*, 827 N.W.2d at 676 (noting that appellate courts do not disturb property division rulings unless there is a failure to do equity).

As we agree with the district court that Shauna should receive ten percent of the equity in the value of the house, the issue becomes determining the equity. Neither party challenges the district court's finding that the first mortgage on the house had a balance of $112,000 at the time of trial, so the only remaining issue is the house's value. Shauna asserts the value is the house's assessed value at the time of trial of $187,800. Christopher highlights the house's problems, including its need for new cupboards, carpet, and trim; its problems with the septic system; and the estimated $30,000 cost of connecting the house to the city sewer system. He values the house at $150,000—a value accepted by the district court.

Contrary to Shauna's argument, we find ample evidence supporting the district court's decision to value the house at $150,000, and we find no equitable reason to disturb it following our de novo review. *See id.* Subtracting the balance of the mortgage from the value of the house yields equity of $38,000. We agree with the district court's decision to award ten percent of that figure—$3800—to Shauna as additional equalization payment.

### B.    The Construction Business

During the marriage, the parties started a construction business set up as a limited liability company (LLC).  Both parties invested premarital funds in the business, with Christopher contributing significantly more premarital funds than Shauna.[1]  When the parties separated, Shauna withdrew approximately $21,000 from the LLC's bank account, almost draining the account.  During the course of the dissolution, the district court granted an injunction prohibiting Shauna from having any managerial authority of the LLC; contacting any employees or customers of the LLC; having any signature authority over accounts; acting on behalf of the LLC; and interfering with the operation of the LLC.  Christopher was given authority to operate the LLC, with certain spending limitations, and Shauna was to receive $2500 per month from the LLC or Christopher as temporary support.

The parties continued under the terms of the injunction for approximately one year, but each party claimed the other party violated the terms of the injunction and the court's temporary support order.  Shortly before trial, Christopher withdrew from operation of the LLC.  He started doing the same type of construction work for a business started in his adult daughter's name.[2]

At trial, the court found that both parties shared responsibility for the downturn in the fortunes of the business, "Christopher due to his management style and Shauna due to her inability not to interfere in the operation of the business

---

[1] The evidence shows Christopher invested about $66,000 of premarital funds in the LLC while Shauna invested about $8000 of premarital funds.

[2] Christopher's daughter is not Shauna's daughter.

despite the existence of the injunction." The court found that Shauna maintained a business relationship with one of the LLC's employees despite the injunction and "did what she could to make life as difficult as possible for Christopher and his operation of the business." The court also found that "Christopher did not help the situation by his failure to be completely above board with Shauna" during the time he had control of the business. Due to the behavior of both parties harming the business, the court determined that the business had no value as a going concern and the best solution would be to liquidate the assets, pay off the debt, and distribute what was left. Christopher advocated for this solution. However, the court declined to implement this solution, largely because of the evidence suggesting that Christopher had not returned all assets belonging to the LLC. As a solution to the problem of the missing assets, the court awarded the LLC to Christopher and placed a value on it that included the value of assets Christopher was alleged to have taken or hidden. After taking into account the amount of premarital funds invested by both parties and Shauna's taking of $21,000 from the business's bank account upon separation, the court awarded Shauna $15,000 of additional equalization payment to account for her ownership interest in the LLC.

On appeal, Shauna does not challenge the value placed on the LLC at the time of trial. Instead, she challenges the date of trial as the proper valuation date. She contends that, due to Christopher's mismanagement of the business and his actions in competing against the LLC after turning over control to Shauna, the business should be valued at an earlier date. She contends that the highest value placed on the LLC by a court-appointed special master should be used. That value

is $309,353. She contends she should receive one half of this amount (approximately $154,677) as her equity in the LLC.

We reject Shauna's contention. First, we value property as of the date of trial. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). This is not a concrete rule, *see In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997), but we see no equitable reason to deviate from it in this case. We agree with the district court that both parties contributed to any decline in the value of the business, so we see no equity in using some arbitrary alternative valuation date now that it has been settled that Christopher receives the LLC.

Second, we reject Shauna's proposed valuation of the LLC, even at an earlier date. As noted, Shauna relies on the report of a court-appointed special master for her valuation. There is some measure of irony in this because, at trial—when Shauna proposed that she receive the LLC—Shauna objected to the introduction of the special master's report. She noted that it was not a final report and it did not account for the LLC's loss of key customers.[3] In addition, in her post-trial written arguments, Shauna again proposed that she receive the LLC and that its value be placed at zero. In making this argument, she explained at great length why the special master's report was misguided, how the value of the business had declined, and why she believed the LLC had no value. Now that Christopher is receiving the LLC, Shauna sees the special master's report in a whole new light and thinks the special master's opinions are spot on—especially the opinion that

---

[3] While the district court admitted the report over Shauna's objection, the district court noted that it gave little weight to the report for the very reasons cited in Shauna's objection.

places the highest possible value on the LLC. We are not persuaded by Shauna's about-face. The report is labeled as a "discussion draft" and contains little in the way of explanation of how the figures in the report were calculated. The special master did not testify to explain the calculations, and they are not self-explanatory. As a result, we place no weight on the report. Instead, we agree with the district court—and with Shauna's points made in her post-trial written arguments—that the business has no value beyond the liquidation value. The conclusion that the business has no value beyond liquidation value is supported by the fact that Christopher was able to start a nearly identical competing business immediately after withdrawing from the LLC.

Turning to the liquidation value, the court used a report from an appraiser that valued the LLC's assets at $164,700. Neither party meaningfully challenges this figure, and we find no fault with it, so we agree that $164,700 is a proper value for the LLC's assets. As to the LLC's debts, the evidence establishes that the remaining balance on the LLC's loan is $150,000. Subtracting the loan balance from the value of the assets yields a net liquidation value of the LLC of $14,700. If each party received half of this amount, Shauna should have only received an addition to the equalization payment owed to her of $7350. Instead, the district court awarded Shauna $15,000 of additional equalization payment to account for her half interest in the LLC. Given the LLC's liquidation value, coupled with the fact that the liquidation value does not account for Christopher's infusion of approximately $58,000 more in premarital funds than Shauna or account for the

$21,000 Shauna took from the LLC's account upon separation,[4] we cannot find that the district court's award to Shauna for her half of the value of the LLC to be inequitable to Shauna.

## III.    Conclusion

We find no inequity in the manner in which the district court valued the parties' house or LLC in arriving at an equalization payment owed by Christopher to Shauna.  Accordingly, we affirm the district court's ruling in its entirety.  Costs on appeal are assessed to Shauna.

**AFFIRMED.**

---

[4] Although we note the fact that Shauna's diverting of this $21,000 is not accounted for directly, it may not have any meaningful impact on the final outcome.  Due to the fungible nature of money, that $21,000 is presumably accounted for in the other assets and debts that were valued and divided because the diverted money would have still been available for division, resulted in the accumulation of other assets, resulted in the pay down of debt, or been used to pay bills, thus avoiding the need to use other assets to pay those bills or the accumulation of more debt.  Any combination of these uses of the diverted money would increase marital net worth subject to division.  *See In re Marriage of Van Voorst*, No. 21-0228, 2021 WL 5106054, at *2 (Iowa Ct. App. Nov. 3, 2021) (discussing the fungibility of dollars and the futility of trying to separately account for funds accumulated or spent during the marriage).  Absent dissipation—an allegation that has not been made or established by this record—the withdrawn money is accounted for in some indeterminate manner in the entire marital estate nest egg being divided.