**IN THE COURT OF APPEALS OF IOWA**

No. 23-1522
Filed March 19, 2025

**IN RE THE MARRIAGE OF CRAIG ALAN NAEVE
AND TANIA RENEE NAEVE**

**Upon the Petition of
CRAIG ALAN NAEVE,**
        Petitioner-Appellant,

**And Concerning
TANIA RENEE NAEVE,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Dustria A. Relph,

Judge.


        Craig Naeve appeals property-division provisions of the district court's

decree dissolving the parties' marriage. **AFFIRMED.**


        Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines,

for appellant.

        Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, and J.D.

Hartung of Hartung Schroeder, LLP, Des Moines, for appellee.


        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

The district court entered a decree dissolving the marriage of Craig and Tania Naeve, who married in 1996. Craig appeals. He raises two issues, both related to the decree's division of property. He contends the property division is inequitable because the district court (1) treated part of the value of assets he received as gifts as marital property and divided it and (2) treated him as if he still owned money he no longer had because he dissipated it. Tania defends the decree and requests that we order Craig to pay her appellate attorney fees.

**I.     Standard of Review**

As dissolution-of-marriage proceedings are in equity, we review them de novo. *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022); Iowa R. App. P. 6.907. As such, we give weight to the district court's fact findings, especially as to credibility determinations, but we are not bound by them. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

**II.     Division of Property Received as a Gift**

As part of entering a decree in any dissolution-of-marriage case, the district court must equitably divide the parties' property. Iowa Code § 598.21(1) (2021). While equitable division does not necessarily mean equal division, equality is often most equitable. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). To equitably divide the parties' property, the court must identify all assets and debts of either or both parties to include in the marital estate. *Id.* Inherited property and gifts received by one spouse are generally excluded from the marital estate and are not subject to division, as they are set aside as the separate property of the recipient. Iowa Code § 598.21(6); *cf. Keener*, 728 N.W.2d at 193. However, gifts

received by one spouse can be subject to division "upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." Iowa Code § 598.21(6); *accord McDermott*, 827 N.W.2d at 679.

At issue here are three rental properties Craig received as gifts from his grandparents. The gift first came to him in 2001 in the form of being named the beneficiary of his grandparents' trust that owned the three properties. For the seventeen years that followed, Craig managed the properties, including maintaining them, improving them, and collecting rents. In return, Craig received the income from the trust properties.

Craig owned other properties as part of a rental and flipping business, which he held in a limited liability company (LLC) of which he was the sole member. Late in 2018, his grandparents' trust transferred ownership of the three rental properties it owned to Craig's LLC. As a result, Craig's LLC owned all the rental properties that he maintained, managed, and improved and from which he received income.

There is no question Craig received the three rental properties at issue as gifts from his grandparents. Nevertheless, at trial, Tania sought to have the properties treated as marital property subject to division. Craig sought to have the properties set aside as his separate property that would not be subject to division.

In determining whether it is inequitable to exempt a spouse's gift from division, courts consider five factors: (1) the parties' contributions to the property and its care, preservation, or improvement; (2) whether there is an independent close relationship between the donor and the spouse of the gift recipient; (3) "separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them"; (4) any special

needs of either party; and (5) any other circumstances that would make it plainly unfair to a spouse or child to have the property set aside for the exclusive benefit of the recipient spouse. *McDermott*, 827 N.W.2d at 679. Applying those five factors, the district court found a middle ground between the polar-opposite positions taken by the parties. The court found the value of the properties when ownership was transferred from the trust to Craig's LLC in 2018 to be $252,600, and their value to be $390,400 at the time of trial—an increase in value of $137,800. The court awarded the properties to Craig but treated the $137,800 increase in value as marital property. As a result, $137,800 of the value of the gifted rental properties was counted on Craig's side of the ledger when the court compared and generally equalized the respective net worths of the parties.

Craig does not challenge the values found by the district court. Rather, he contends the entire value of the gifted rental properties should be excluded from the marital estate and not accounted for on his side of the ledger. In assessing Craig's argument, we are mindful that, even with de novo review, we do not disturb the district court's property-division ruling unless it fails to do equity. *See id.* at 676. We find the district court's approach to be equitable.

The district court thoroughly reviewed the five *McDermott* factors and applied them to the facts, which led the district court to conclude equity required treating the increase in value as marital property. Because we generally agree with the district court's reasoning, we find it unnecessary to repeat or restate it in this opinion. Instead, we simply highlight some of the more important points.

Even before the properties were transferred from the trust to Craig's LLC in 2018, the family reaped the benefits of the income from the properties to

supplement the household income. The family continued to reap the benefits of the income from the properties after the transfer. *See In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982) (considering the length of the marriage and the length of time the property was held after it was given as a factor favoring treating gifted or inherited property as marital property).

Also, while Tania did not directly contribute much in the way of services to maintain the properties, she was primarily responsible for tackling the tasks needed to keep the household running and taking care of the child-rearing duties while also maintaining employment outside the house for much of the marriage. This freed up time and provided income that allowed Craig to maintain, improve, manage, and flip the properties—indirectly contributing to the properties increase in value and continuing to generate income for the family for over two decades. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 319–20 (Iowa 2000) (finding that when the parties enjoyed an improved standard of living over a long period of time as a result of gifts or inheritance, the property division should enable the parties to continue the improved lifestyle even if doing so requires division of gifted property).

Finally, while commingling of gifted property with marital property is not dispositive, it is a factor to consider. *See In re Marriage of Soloski*, No. 05-0310, 2006 WL 623583, at *5 (Iowa Ct. App. Mar. 15, 2006). Here, there was commingling. While the gifted properties are traceable, the income generated from them is not due to a blurring of the line between property of the LLC and property of the marital household. Rental payments from the properties sometimes made it into the LLC account, and sometimes they didn't. Craig admitted to periodically spending rent received in cash rather than depositing it. Even if the cash was not

spent on household expenses, whatever it was spent on negated the need to use the parties' other assets for those expenditures. *See In re Marriage of Van Voorst*, No. 21-0228, 2021 WL 5106054, at *2 (Iowa Ct. App. Nov. 3, 2021) (discussing the fungible nature of money and its impact on the marital estate). In addition, household bills were commonly paid from the LLC account, further blurring the line between the gifted property and marital property.

Under these circumstances, we find nothing inequitable about the district court's decision to treat the post-2018 increase in value of the gifted rental property as marital property.

## III.    Dissipation

About seven months after filing the dissolution petition, Craig paid his grandmother $125,000. He contends the payment was repayment of a loan. Tania contends it was an effort to hide assets by getting the money out of the marital estate. In other words, she claims he dissipated it. The district court sided with Tania and included the $125,000 on Craig's side of the ledger for purposes of comparing and generally equalizing the parties' net worths in the property division.

Dissipation occurs when, during the period of separation, one of the spouses disposes of property or spends marital funds for things other than "legitimate household and business expenses." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013) (citation omitted). The remedy when dissipation occurs is to include the dissipated asset in the marital estate and award it to the spouse who wasted it, even though that spouse no longer has the asset. *Id.* at 701. Analyzing a dissipation claim has two phases. *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). Under the first phase, the spouse alleging dissipation

must specifically identify the assets allegedly dissipated. *Kimbro*, 826 N.W.2d at 701. Then the spending spouse has the burden to "show how the funds were spent or the property was disposed of by testifying or producing receipts or similar evidence." *Id.* (citation omitted). If the spending spouse makes the initial showing, the second phase involves the court determining whether the spending or disposal of assets amounts to dissipation by considering four factors: (1) the proximity in time of the expenditures in relation to the parties' separation; (2) "whether the expenditure was typical of expenditures made by the parties prior to the breakdown of their marriage"; (3) whether the expenditure benefited the marital enterprise or was only for the benefit of the spending spouse; and (4) the need for and the amount of the expenditure. *Id.*

Craig attempted to prove that he did not dissipate the $125,000 by his testimony and that of his grandmother. Both testified the payment was for repayment of a loan the grandmother had extended to Craig years earlier. As Craig highlighted in his arguments to the district court, this issue largely boils down to a credibility determination. Unfortunately for Craig, the district court found him to be lacking in credibility generally and impliedly found the grandmother was not credible by rejecting her testimony and commenting on her lack of recollection of details. Even with de novo review, we give considerable weight to these credibility determinations. *See McDermott*, 827 N.W.2d at 676.

In addition to the credibility determinations, the district court provided thorough analysis of the four dissipation factors and concluded the payment was not for a loan but, instead, was an effort to hide assets. As we agree with much of the district court's reasoning, we need not repeat it. It is sufficient to say that we

agree with the district court's reasoning and conclusion that Craig dissipated the $125,000. But we highlight the most damning evidence that defeats Craig's challenge—evidence in the form of his own sworn statement. About two months after the parties separated, Craig filed an affidavit of financial status. The affidavit separately listed all real estate owned by the parties. For each parcel, Craig provided information as to the parcel's value and any encumbrance against it. The affidavit also listed other debts he owed. Nowhere in that affidavit did he disclose the $125,000 debt he now claims he owed to his grandmother. No such debt is listed as an encumbrance on any of the rental properties, and no such debt is listed under the category of "other debts." Two months after signing and filing that affidavit, Craig paid his grandmother $125,000 in supposed repayment of a loan she extended to him several years earlier—a claimed loan for which the grandmother had very little recollection as to details, a claimed loan that had never been mentioned to Tania, and a claimed loan that did not appear on Craig's financial affidavit two months earlier.

On this record, including the district court's credibility determinations adverse to Craig, we find no inequity in applying the dissipation doctrine to the $125,000 payment.

## IV.    Appellate Attorney Fees

Tania seeks an award of appellate attorney fees. An award of appellate attorney fees rests in our discretion and is not a matter of right. *McDermott*, 827 N.W.2d at 687. In exercising that discretion, we consider the needs of the requesting party, the other party's ability to pay, and the relative merits of the

appeal.  *Id.*  After considering these factors, we deny Tania's claim for appellate attorney fees.

**V.     Conclusion**

Finding nothing inequitable about the district court's decision to treat the increase in value of gifted property as a marital asset and to apply the dissipation doctrine to a $125,000 payment made by Craig to his grandmother after the parties separated, we affirm the district court's ruling.  We also exercise our discretion to deny Tania's claim for appellate attorney fees.

**AFFIRMED.**