**IN THE COURT OF APPEALS OF IOWA**

No. 24-0324
Filed May 21, 2025

**IN RE THE MARRIAGE OF MICHELLE L. RASMUSSEN
AND SCOTT M. RASMUSSEN**

**Upon the Petition of
MICHELLE L. RASMUSSEN,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
SCOTT M. RASMUSSEN,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Shelby County, Amy Zacharias,

Judge.


        Former spouses appeal and cross-appeal the property division in the

decree dissolving their marriage. **AFFIRMED ON APPEAL; AFFIRMED AS**

**MODIFIED ON CROSS-APPEAL.**


        Theodore R. Wonio of Rasmussen, Nelson and Wonio, P.L.C., Atlantic, for

appellant/cross-appellee.

        Jodee D. Dixon and Bryan D. Swain of Salvo, Deren, Schenck, Gross,

Swain & Argotsinger, P.C., Harlan, for appellee/cross-appellant.


        Considered without oral argument by Schumacher, P.J., and Badding and

Chicchelly, JJ.

**BADDING, Judge.**

In its decree dissolving the parties' twenty-five-year marriage, the district court ordered Scott Rasmussen to pay Michelle Rasmussen a cash equalization payment of $100,000. Unhappy with this result, Scott appeals and Michelle cross-appeals. They each challenge the amount of the cash equalization payment. Scott argues the payment is too high because Michelle dissipated marital assets, while Michelle argues the payment is too low because of an excluded asset and errors in the court's calculations. Scott also challenges the court's decision to award an empty lot at Lake Panorama to Michelle. On our de novo review of the record,[1] we determine Scott's equalization payment to Michelle should be increased.

1.    *Dissipation of Assets*

Michelle's spending habits have been a source of contention between the parties since they married in 1998. By 2002, Scott said that Michelle "got in over her head on credit cards," to the tune of about $20,000. The couple paid the debt off with a settlement that Scott had received from his work. Ten years later, they separated their finances because each was frustrated with how the other was spending money. From then on, Scott paid for most of the household bills—like the mortgage and utilities—while Michelle took care of things like groceries and presents. As the marriage went on, Michelle's credit card debt built back up, totaling $31,685.50 by 2021. Michelle didn't know how she spent that much

---

[1] Although our review in this dissolution proceeding is de novo, "we defer to the factual findings of the district court." *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). "However, those findings are not binding upon us." *Id.*

money, testifying, "that's what my therapist and I are trying to figure out. I have—I had spending issues."

To pay off her credit cards, Michelle took out a $35,000 loan against her 401(k). A few weeks later, in November 2021, she was laid off from her long-time employment and received a severance package totaling about $35,000. She withdrew the rest of her 401(k)—about $38,000—and converted the loan to a withdrawal. These withdrawals resulted in a tax burden of $18,819.89. Michelle used the 401(k) funds to satisfy that tax debt and pay off her credit cards, as well as a loan on her 2017 Jeep Cherokee for $11,352.43.

In February 2023, Michelle petitioned for divorce from Scott. She used some of the money left over from her 401(k) withdrawal to retain an attorney and establish a new residence for herself. By the dissolution trial in December, Michelle only had $10,000 left in a savings account from the 401(k) money. When asked at trial where the rest of it went, Michelle admitted: "Honestly, it's frivolous." Scott testified that he did not know about much of this until the trial, stating he was "floored" by the numbers that he was hearing. He asked the court to deny Michelle's request for a payment to equalize their mostly agreed-upon property division because she dissipated marital assets.

The district court granted Scott's request, to an extent. On Michelle's side of the property division ledger, the court included the total estimated value of her 401(k) account before its liquidation—$80,000, plus $3220 from her current 401(k). *See In re Marriage of Fennelly*, 737 N.W.2d 97, 106 n.6 (Iowa 2007) ("Typically, a dissipated asset is included in the marital estate and awarded to the spouse who wasted the asset."). But it subtracted the $10,000 that Michelle still had in a

savings account from that amount, plus the credit card debt of $31,685.50 that she paid off with those funds. Although the court found that "[n]o one disputes that paying off the Jeep was erasing a marital debt," it did not subtract that amount from the 401(k) balance assigned to Michelle.

On appeal, Scott contends the district court should not have subtracted the credit card debt of $31,685.50 from the 401(k) balance assigned to Michelle. And he says the court should have included the $20,000 in credit card debt the couple paid off early in the marriage on Michelle's side of the ledger. We disagree. "The dissipation doctrine applies when a spouse's conduct *during the period of separation* 'results in the loss or disposal of property otherwise subject to division at the time of divorce.'" *Kimbro*, 826 N.W.2d at 700–01 (emphasis added) (citation omitted); *see also In re Marriage of Balik*, No. 17-0805, 2018 WL 3912104, at *1 (Iowa Ct. App. Aug. 15, 2018) ("*Kimbro* identified the time frame for analysis of dissipation as the period of separation."). Because both debts accumulated over the course of the marriage and before the parties separated, the dissipation doctrine does not apply. *Kimbro*, 826 N.W.2d at 700–01; *see also In re Marriage of Oyadare*, No. 24-0280, 2025 WL 1066418, at *4 (Iowa Ct. App. Apr. 9, 2025). As we stated in *In re Marriage of Bloomquist*,

> We imagine that many spouses—whether still married or going through a divorce—are disgruntled with their partners' spending habits, but, if they divorce, we generally do not look back to try to account for past spending. Instead, we simply divide up what's left because marriage does not come with a ledger.

No. 21-1631, 2023 WL 1812846, at *3 (Iowa Ct. App. Feb. 8, 2023); *see also Fennelly*, 737 N.W.2d at 103 ("It is important to remember marriage does not come with a ledger.").

On cross-appeal, Michelle's only challenge to the inclusion of the liquidated 401(k) funds in the property division is the district court's failure to subtract the $11,352.43 that she used to pay off the debt on her 2017 Jeep Latitude. Scott agrees the court should have accounted for that payment, contending: "The only expense that was reasonable was the vehicle loan payoff in the amount of $11,352.43." We accordingly make that adjustment to the property division.

*2. Division of Assets*

The Rasmussens bought an empty lot at Lake Panorama in 2012 for $8000, with hopes of building a home and retiring there someday. But as of the time of trial, the lot was still undeveloped and without utilities or a sewer system. Michelle described it as a "C lot":

> An A lot is a lot on the lake. It's got lakeshore. A B lot, basically is like across the road, so you can see the lake but it's not considered on the lake. And then a C lot is the next step away from a B lot. So you can see the lake from our property, but you have to stand at a certain angle and squint between two houses in order to see it.

Michelle valued the lot at its assessed value of $16,300 and asked that it be awarded to her. Scott thought it was worth $50,000 and said that Michelle "can have it" at that value, although he also testified that he would take it for $30,000 so that he could "turn around and sell it for more." Now, on appeal, Scott claims the district court should have valued the lot at $30,000 and awarded it to him. We find the court's value to be within the range of evidence and decline to disturb its award of the lot to Michelle. *See In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007) ("A trial court's valuation will not be disturbed when it is within the range of evidence.").

This leaves Michelle's claim on cross-appeal that the district court failed to include a $30,000 service truck that Scott used in his farm equipment repair business. Although Scott did not include the truck in his financial affidavit, he disclosed it in response to a discovery interrogatory from Michelle. Scott confirmed that discovery response at trial, testifying he bought the truck for $30,000 to get his business started. And he agreed that it should be valued at that amount. We adopt Scott's value and assign that asset to him. *See Fennelly*, 737 N.W.2d at 102 (stating that Iowa Code section 598.21(5) requires "'all property, except inherited property or gifts received by one party,' to be equitably divided between the parties"). Michelle also claims the court made a computing error in its calculation of Scott's net assets, incorrectly finding the total added up to $279,389.76 when it actually added up to $304,054.03. We agree and make that adjustment as well.

With the addition of the truck, the modification to the 401(k) funds, and the correction of the property award calculations, Scott's total net property award is now $334,054.03, while Michelle's is $67,782.07. To equalize the division in this twenty-five-year marriage, we conclude Michelle is entitled to the additional $33,000 she requests on appeal, bringing Scott's total cash equalization payment to $133,000.[2] *See In re Marriage of McDermott*, 827 N.W.2d 671, 682 (Iowa 2013) (stating that because equality is often most equitable, "we have repeatedly insisted upon the equal or nearly equal division of marital assets").

We modify the decree to order Scott to pay Michelle the additional $33,000 within 180 days after procedendo issues in this appeal. Although Michelle was

---

[2] The exact amount to equalize the division is $133,135.98, but we adopt Michelle's rounded figure.

successful on appeal, we deny her request for appellate attorney fees after considering the relevant factors. *See In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).

**AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**