**IN THE COURT OF APPEALS OF IOWA**

No. 17-1191
Filed November 7, 2018

**IN RE THE MARRIAGE OF DARREN M. BECHTHOLD
AND ANGELA J. BECHTHOLD**

**Upon the Petition of
DARREN M. BECHTHOLD,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
ANGELA J. BECHTHOLD,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David P.

Odekirk, Judge.


        Darren Bechthold appeals, and Angela Bechthold cross-appeals, a decree

of dissolution of marriage.  **AFFIRMED IN PART AND AFFIRMED AS MODIFIED**

**IN PART ON APPEAL; AFFIRMED ON CROSS-APPEAL.**


        John R. Walker, Jr. of Beecher, Field, Walker, Morris, Hoffman & Johnson,

PC, Waterloo, for appellant.

        Timothy M. Sweet and Maria L. Hartman of Sweet & Hartman, PLC,

Reinbeck, for appellee.


        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Darren Bechthold appeals, and Angela Bechthold cross-appeals, a decree of dissolution of marriage. Darren challenges the tax-liability, property-distribution, child-support, spousal-support, and attorney-fee provisions of the decree as inequitable. Angela argues the awards of spousal support and attorney fees in her favor are inadequate, the district court's consideration of new evidence in conjunction with Darren's post-trial motions was improper, and Darren's child-support obligation should be increased on appeal in light of new Iowa Court Rule 9.11A. Angela seeks an award of appellate attorney fees.

## I.      Background Facts and Proceedings

Darren and Angela met in high school and were married in 1994. The marriage produced four children, three of whom were minors at the time of trial: JB1 (born in 2000), JB2 (born in 2003), and JB3 (born in 2011).

At the time of trial, Darren was forty-four years of age. He has a bachelor's degree and works as a maintenance engineer for an implement manufacturer, a position in which he earns $95,046.33 per year. In recent years, Darren has averaged just over $16,000.00 in annual voluntary contributions to his 401k plan. In addition to his regular employment, Darren has assisted his father with farming for most of his life and the two have operated a farming partnership, Bechthold Farms. In the early 2000s, Darren started his own angus-breeding business. The business has "progressed" over the years, and Darren has developed a reputation in the industry based on the high quality of the cattle he produces. Angela has never taken part in the farming or breeding operations and she had very little involvement with the banking and financing arrangements associated with the

same. In fact, Darren advised Angela in the past that she "would never figure out what he was up to financially." Darren's income from his regular employment was applied to family expenses. Darren's agricultural ventures did not support the family financially. Any profits from those ventures were generally applied to keep the agricultural operations themselves afloat or pay off related debt. Darren's loan officer opined Darren has a spending issue when it comes to agricultural equipment and his cattle operation and Darren's spending habits create cash-flow problems for the operations. During the marriage, the parties' income from their regular employment was used to subsidize the agricultural operations and related debt.

Angela was forty-one years old at the time of trial. She has a bachelor's degree in elementary education and works as an elementary school teacher, a position in which she earns $47,022.48 per year. With the exception of one or two summers in which Angela taught summer school, Angela does not work in the summer months. The parties mutually agreed that it would be more beneficial for Angela to spend her summers with the children. Darren suggested on numerous occasions that Angela give up teaching altogether in order to stay home with and raise the children and maintain the home full time. Unquestionably, Angela has served as the primary caregiver to the parties' children in every respect and has maintained the home throughout the marriage.

In 1995, Darren and Angela, together with Darren's parents, purchased roughly 160 acres of farm land for $937.50 per acre; Darren's father covered the down payment. In 1996, Darren and Angela purchased the marital home, a roughly six-acre acreage with a residence, on contract from Darren's parents.

Later, the parties granted a mortgage on the property, received a loan, and paid off the contract. Over the years, the parties made several improvements to this property. In 2010, Darren and Angela purchased an additional 28.5 acres on contract from a neighbor to use as a pasture. At the time of trial, the balance on the pasture contract was $32,300.80.

Darren began engaging in an extramarital affair with Vanessa in or around 2011.[1] Angela learned of the affair in late 2012. Efforts were made to save the marriage, but Darren continued his affair with Vanessa. In May 2014, Darren filed the petition for dissolution of marriage in this matter. For a time, the parties continued to reside together in the marital home. In May 2015, however, Darren vacated the marital home and moved in with Vanessa, where he lived free of charge. Darren continued to pay for the bulk of the fixed expenses relating to the marital home, while Angela continued to pay for groceries, daycare, and fees relating to the children's schooling and extracurricular activities.

In late June 2015, a restructure note previously signed by both parties reached maturity. Darren sought an extension on the note, and the bank advised it would need signatures on the extension from both Darren and Angela. Angela agreed to sign the extension after some hesitation, which stemmed from her concern for the agricultural operations' continuing viability. After the extension was granted, the restructure note came due again in October. Darren sought another extension, but this time Angela, in fear of accumulating any more debt associated

---

[1] We expressly note Iowa is a no-fault dissolution-of-marriage state. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007). "[W]e only consider a party's indiscretions if [a] child was harmed by that behavior." *In re Marriage of Rothfus*, No. 13-1745, 2014 WL 2885340, at *4 (Iowa Ct. App. June 25, 2014).

with the agricultural operations, declined to sign for the extension. In any event, emails between Angela and Darren's loan officer at Farmers State Bank (FSB), Kelly Peyton, indicate Peyton was skeptical about offering another extension and if he were to do so, he would need board approval. The bank decided to call the restructure note and an additional operating note of which Angela was not a signatory, which were cross-collateralized. Both notes were secured by, among other things, the marital acreage. Darren was unable to borrow any additional money from the bank in the fall of 2015, he farmed significantly fewer acres in 2016 as a result of being unable to cover the input costs, and the bank placed liens on all of Darren's farming sales and most of his cattle sales. In March 2016, in order to lessen the debt, Darren sold 80 acres of land to his father for $516,750.00. Darren additionally sold his one-half interest in the equipment owned by the Bechthold Farms partnership for $95,000.00. The total proceeds of $611,750.00 were applied to debt at FSB. Around the same time, FSB discharged Angela's liability under the remaining debts.

In April 2016, Angela vacated the marital home as a result of Darren's frequent visits to the home and his behavior toward Angela during some of those visits. Angela moved into a home that Darren's parents purchased for her, where she lived for very little, if any, cost.[2]

A dissolution trial was held in May 2016. The court entered its decree in February 2017. The court granted the parties joint legal custody of all three

---

[2] The record indicates at the time of trial Angela was living in this residence rent free, as Darren's parents allowed her to stay in the home free of charge until the dissolution proceedings ceased. Thereafter, however, Angela was to pay $800.00 in monthly rent.

children and joint physical care of JB1, as was requested by the parties. The court granted Angela physical care of JB2 and JB3, with liberal visitation for Darren. Angela was awarded monthly child support in the amount $1339.53 so long as all three children are eligible, $1125.42 so long as two children are eligible, and $791.34 when only one child is eligible. The court noted no award of cash medical support was going to be made because the children were already covered by Darren's employer-provided health insurance. The court divided the assets and liabilities of the parties and ordered Darren to pay an equalization payment in the amount of $168,122.50 and an additional contempt offset in the amount of $3447.50. Angela was awarded traditional alimony in the amount of $500.00 per month. As to taxes, the court decreed, "Darren shall be responsible for any capital gains taxes resulting from the parties' sale of land and machinery in 2016 and shall indemnify and hold Angela harmless therefrom." Finally, the court ordered Darren to pay $15,000.00 toward Angela's attorney fees.

Angela filed a motion to enlarge or amend requesting the court to, among other things, correct an error in the court's property-distribution calculation concerning life insurance. Darren filed his own motion to enlarge or amend in which he took issue with a number of the court's findings and conclusions. Among other things, Darren requested the court to reconsider its valuation of the marital acreage and the remaining liability under the pasture contract, the spousal-support award in favor of Angela, its decision to assign to Darren the tax liability resulting from the March 2016 sale of land and equipment, the calculation used to reach Darren's child-support obligation, and the award of attorney fees in favor of Angela. Darren also alleged the court erred in including cash medical support in its child-

support calculation and challenged the provision in the decree requiring him to maintain Angela as the primary beneficiary of his pension. Darren requested that both parties receive marital-share survivor benefits in one another's pensions. Finally, Darren requested "further clarification" on the sharing of expenses for JB1.

Thereafter, Darren filed a petition to modify pursuant to Iowa Rule of Civil Procedure 1.1012. Therein, Darren alleged his tax liability flowing from the 2016 sale of land and equipment would amount "to approximately $81,000 which essentially nullifies the court's distribution attempting to balance equities between the parties." Darren attached to his petition allegedly "newly discovered evidence" for the court's consideration—a projected tax return for 2016 and an affidavit from Darren's accountant stating, "the anticipated tax liability to the marital estate is approximately $81,000." Angela moved to dismiss the petition to modify, arguing the tax consequences did not amount to newly discovered evidence, as is required by rule 1.1012(6), as the sale occurred prior to trial and the tax consequences of the sale could have been estimated at that time and presented as evidence at trial.

Nearly two months after filing his motion to enlarge or amend, Darren submitted a filing entitled "evidentiary documents in support of petitioner's motion to enlarge or amend" on the issue of valuation of the marital acreage. Attached to this filing was a March 2017 "appraisal report" for the marital home. Angela moved to strike, arguing the introduction of new evidence not submitted at trial in conjunction with a motion to enlarge or amend is inappropriate.

Following a hearing on the post-trial motions, the court entered a ruling on the issues. The court amended its decree to assign the cash value of Darren's life insurance policy to Darren instead of Angela. This modification resulted in an

increase of Darren's equalization payment to $177,744.06. The court declined Darren's requests as to valuation of the marital acreage and the liability under the pasture contract, the spousal-support award in favor of Angela, its decision to assign to Darren the 2016 tax liability, the calculation used to reach Darren's child-support obligation, and the award of attorney fees in favor of Angela. As to Darren's pension, the court modified its decretal language to state "Angela is awarded survivor benefits in the same proportion as her marital share of the pension . . . ." The court denied Darren's request that he receive survivor benefits in Angela's IPERS pension. The court also denied Darren's request to remove cash medical support from the child-support calculation. As to expenses for JB1, the court clarified the parties were to split expenses on a pro-rata basis, with Darren paying sixty-one percent and Angela paying thirty-nine percent.

As to Darren's petition to modify, the court concluded "assignment [to Darren] of all the [tax] liability was a known, possible result of the dissolution," Darren had all the information to determine the potential tax liability, and, as such, the information was not newly discovered evidence within the meaning of rule 1.1012. The court denied Angela's motion to strike.

As noted, both parties appeal.

## II. Standard of Review

Review of dissolution cases is de novo. Iowa R. App. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *Fennelly*, 737 N.W.2d at 100. Because the court bases its decision on the unique facts of each

case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

### III. Analysis

The parties raise various and interrelated challenges to the district court's rulings in the dissolution proceedings. We will address each of their claims in turn.

#### A. Tax Liability

Darren challenges the district court's decision to assign him the tax liability for 2016, which is largely attributable to the 2016 sale of farm property and assets, without a downward adjustment in his equalization payment as inequitable. As a preliminary matter on this issue, we note that although the issue of tax liability on the sales was raised during trial, Darren presented no evidence concerning estimates of such potential tax liability for the 2016 tax year. We agree with Angela and the district court that the figures presented in conjunction with Darren's petition to modify pursuant to Iowa Rule of Civil Procedure 1.1012 were not newly discovered evidence—only newly calculated—and were therefore not properly before the court. Under these circumstances, we will not consider those post-trial tax liability figures in conjunction with an adjustment to the property equalization payment as Darren has requested. However, because the issue of apportionment of potential tax liability was raised in and ruled upon by the district court, we will consider the equity of the court's ruling on the issue.

Marital property is to be divided equitably, considering the factors contained in Iowa Code section 598.21(5) (2014). *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). The allocation of marital debts is as integral a part of a property division as is the allocation of marital assets. *In re Marriage of Johnson*,

299 N.W.2d 466, 467 (Iowa 1980); *In re Marriage of Erickson*, 553 N.W.2d 905, 908 (Iowa Ct. App. 1996). "Both the division of property and the division of debts should be equitable." *Erickson*, 553 N.W.2d at 908. "Courts determine what is fair and equitable based on the particular circumstances of the parties." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "Although an equal division is not required, it is generally recognized that equality is often most equitable." *Id.* (quoting *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005)). In dividing marital assets and debts, courts are to consider, among other things, "[t]he tax consequences to each party." Iowa Code § 598.21(5)(j).

"Our courts have long recognized marriage as an economic partnership to which both parties contribute their hard work and skills." *In re Marriage of Lande*, No. 89-1678, 1991 WL 108554, at *3 (Iowa Ct. App. Apr. 2, 1991). In this marriage, both parties have contributed to the partnership. Both parties held full-time jobs that assisted the marriage financially. Angela dedicated the remainder of her efforts to maintaining the home and raising the children. Darren dedicated the remainder of his efforts to the agricultural operations. Although we acknowledge that Angela had very little involvement in the agricultural operations, we find nothing in the record to indicate that the decisions to commence and continue the agricultural ventures during the marriage were anything less than marital partnership decisions between Darren and Angela. For better or worse, the net economic effect of the agricultural ventures, and tax consequences arising out of the necessary partial liquidation of assets of the ventures, are necessary factors for our consideration. *See* Iowa Code § 598.21(5)(j). With these principles in mind, and considering the entirety of the property and debt divisions, we agree that

assigning to Darren all of the tax liability resulting from the sale of property necessary to cover debt associated with the agricultural operations is inequitable—the fact that Angela was on the outside looking in does not completely relieve her of her obligations as an economic partner in this marriage. On the other hand, Angela served as a so-called silent partner in the agricultural operations, she was uninvolved in the business operations and financing, and she had absolutely no hand in the dismal financial situation the operations found themselves in during these proceedings. The dreary financial situation resulted under Darren's management of the business, and from a recent farm recession. We think these circumstances warrant the assignment of a portion of the liability to Angela, but in an amount lesser than that assigned to Darren. Darren argues for a 50/50 split of the tax liability, but concedes that a 61/39 division "in accordance with the parties' respective incomes" could be equitable. Upon our de novo review of the record, we find equity requires modification of the district court's assignment of the tax liability for 2016. We modify the decree to provide Darren shall be responsible to the taxing authorities for the parties' tax liability attributable to the sale of the farm real estate and farm assets for tax year 2016, but as between the parties, Darren shall bear responsibility for sixty-one percent and Angela shall be responsible for thirty-nine percent, with Angela's share paid as an adjustment to the property equalization payment ordered below.[3]

---

[3] Our decision is based on the unique circumstances of this case and the arguments made by the parties in this particular appeal.

B.     Property Distribution

Darren challenges two other matters relative to the district court's distribution of the marital estate—the court's valuations of the marital acreage and debt owed under the pasture contract.  The court's property distribution in this matter is summarized as follows:

| ASSETS | | |
|---|---|---|
| | Darren | Angela |
| Marital Acreage | $320,000.00 | — |
| Pasture Property | $96,000.00 | — |
| Other Assets | $606,953.36 | $32,806.41 |
| TOTAL ASSETS | $1,022,953.36 | $32,806.41 |
| LIABILITIES | | |
| Mortgage on Marital Acreage | ($83,830.28) | — |
| Debt on Pasture Contract | ($24,225.60) | — |
| Other Liabilities | ($535,202.95) | ($8600.00) |
| TOTAL LIABILITIES | ($643,258.83) | ($8600.00) |
| EQUALIZATION ADJUSTMENT | | |
| Assets Less Liabilities | $379,694.53 | $24,206.41 |
| Equalization Payment | ($177,744.06) | $177,744.06 |
| NET MARITAL EQUITY | $201,950.47 | $201,950.47 |

Darren contends the district court's valuation of the marital acreage at $320,000.00 is not supported by the record.  Darren's appraiser valued the property at $285,610.00 a few weeks before the trial.  On appeal, Darren maintains this figure should be used for the value of the marital acreage.  However, the report provided in conjunction with this valuation was vague and lacked supporting detail.  A thorough and detailed appraisal of the property in 2014 valued it at $401,107.00.  An "agricultural financial statement" provided by FSB less than six months before trial valued the property at the same price.  "A trial court's valuation will not be disturbed when it is within the range of evidence."  *Keener*, 728 N.W.2d at 194.  Here, the trial court's valuation was well within the range of evidence, and actually

fell closer to Darren's requested valuation. Because the value of the marital acreage was within the range of evidence presented at trial, we do not disturb it.[4]

Next, Darren complains the district court undervalued the debt on the pasture contract by valuing the debt at the time the decree was entered rather than at the time of trial. Angela simply argues that the payments accruing between trial and the entry of the decree were "properly considered." The undisputed evidence showed that, as of the date of trial in May 2016, the balance on the pasture contract was $32,300.80. An amortization schedule showed two payments were due in June and December of 2016, after which the contract balance would be $24,225.60. In the decree entered in February 2017, the court used the latter figure in its calculations. We agree with Darren that the court should have valued the debt under the contract as of the time of trial. *See id.* at 193 ("The assets should . . . be given their value as of the date of trial."); *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997) ("The value of the assets . . . should be determined as of the date of trial."). We therefore grant Darren's request that we adjust his equalization payment accordingly. We modify Darren's equalization payment to Angela to $173,706.46 in accordance with the following calculation (and reduced by the tax obligation set forth above):

| ASSETS | | |
|---|---|---|
| | Darren | Angela |
| Marital Acreage | $320,000.00 | -- |
| Pasture Property | $96,000.00 | -- |
| Other Assets | $606,953.36 | $32,806.41 |
| **TOTAL ASSETS** | **$1,022,953.36** | **$32,806.41** |
| LIABILITIES | | |
| Mortgage on Marital Acreage | ($83,830.28) | |
| Debt on Pasture Contract | ($32,300.80) | |

---

[4] We do not consider Darren's post-trial "evidentiary documents" on the issue of valuation of the marital acreage.

| | | |
|---|---|---|
| Other Liabilities | ($535,202.95) | ($8600.00) |
| **TOTAL LIABILITIES** | **($651,334.03)** | **($8600.00)** |
| **EQUALIZATION ADJUSTMENT** | | |
| Assets Less Liabilities | **$371,619.33** | **$24,206.41** |
| Equalization Payment | ($173,706.46) | $173,706.46 |
| **NET MARITAL EQUITY** | **$197,912.87** | **$197,912.87** |

Finally, we decline to increase the equalization payment upon Angela's argument that Darren dissipated the assets of the marital estate by purchasing jewelry for Vanessa, as the record indicates the jewelry attributable to that request has already been given to Angela.

C.    Pensions

Darren challenges the district court's decision to award Angela survivor benefits in his pension but decline his request for survivor benefits in Angela's pension.  Angela provides us with no concrete reason as to why she should be entitled to marital-share survivor benefits in Darren's pension but Darren not be entitled to the same in Angela's pension.  In its post-trial ruling, the district court did not provide a specific reason for denying Darren's request for marital-share survivor benefits in Angela's pension.

"Pensions are divisible marital property."  *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006); *accord* Iowa Code § 598.21(5)(i).   Awards of survivorship rights in a pension "depend on the facts of each case and whether the allowance of survivorship rights effectuates an equitable distribution of the parties' assets."  *See In re Marriage of Duggan*, 659 N.W.2d 556, 560 (Iowa 2003).  Upon our de novo review, we find the district court's decision to not award the parties substantially similar marital-share survivor benefits in one another's pensions fails to achieve equity between the parties.  In oral arguments, the parties alluded to the facts that Darren's pension is already the subject of a qualified domestic

relations order but Angela's is not. We modify the decree by holding each party is entitled to substantially similar marital-share survivor benefits in one another's pensions and the survivor benefits provided to Darren as to Angela's pension in a qualified domestic relations order should be substantially similar to those provided to Angela as to Darren's pension.

D.    Spousal Support

Darren argues the district court erred in granting Angela an award of traditional spousal support in the amount of $500.00. He implies he cannot afford to pay Angela any spousal support. Angela challenges the spousal-support award as inadequate and requests that it be increased significantly. "A trial court has considerable latitude when making an award of spousal support." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). We will only disturb the award if it fails to do equity between the parties. *Id.*

The district court may grant an award of spousal support in a dissolution proceeding for a limited or indefinite length of time after considering all of the following factors:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to

that enjoyed during the marriage, and the length of time necessary to achieve this goal.

        g. The tax consequences to each party.

        . . . .

        j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).  Iowa law is clear "that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case."  *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015).

Here, the district court awarded Angela traditional spousal support, "which is often used in long-term marriages," such as this one, "where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'"  *Id.* at 410 (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 62–63 (Iowa 1989)).  The length of the marriage in this case, more than twenty years, is sufficient to warrant the imposition of an award of traditional spousal support.  *See* Iowa Code § 598.21A(1)(a); *Gust*, 858 N.W.2d at 410–11, 415.  The parties are relatively close in age, and there is nothing in the record to indicate either suffers from physical- or emotional-health problems.  *See* Iowa Code § 598.21A(1)(b).  The distribution of property ordered above is relatively equal— although Darren has been assigned with a greater proportion of the tax liability, he has also been awarded all of the assets that have a potential for producing income.  *See id.* § 598.21A(1)(c).  Each party is educated.  *See id.* § 598.21A(1)(d).

The imposition of a spousal-support obligation is predicated on the need of the receiving spouse and the paying spouse's ability to pay.  *See Gust*, 858 N.W.2d at 411; *see also* Iowa Code § 598.21A(1)(e), (f).  "[T]he yardstick for determining

need [is] the ability of a spouse to become self-sufficient at 'a standard of living reasonably comparable to that enjoyed during the marriage.'" *Gust*, 858 N.W.2d at 411 (quoting Iowa Code § 598.21A(1)(f)). As to need, we focus on earning capability of the party seeking maintenance, not necessarily actual income. *Id.*; *see* Iowa Code § 598.21A(1)(e). On appeal Darren argues the evident "disparity in earning capacity between the parties is not as great as their current salaries suggests" as Angela "has chosen not to teach summer school classes or otherwise work for pay outside of the school year." However, the parties have mutually agreed for many years that it would be more beneficial for Angela to spend her summers with the children and not seek employment. *See Gust*, 858 N.W.2d at 411 ("[T]he historical record ordinarily provides an objective starting point for determining earning capacity of persons with work experience."). In light of the considerable amount of time Angela dedicates to caring for the children, we find her salary accurately reflects her earning capacity. The disparity in Angela's earning capacity and the income from Darren's regular employment alone is significant and is likely to remain for the long term. *See id.* (indicating such a disparity weighs in favor of an award of spousal support).

Next, the record affirmatively indicates that Angela will no longer be able to support a standard of living reasonably comparable to that which she enjoyed during the marriage. *See* Iowa Code § 598.21A(1)(f). Although she is gainfully employed, absent an award of spousal support, her life will no longer be subsidized by Darren's contributions, and the lifestyle she enjoyed during the marriage would be unattainable. Spousal support in a moderate amount is appropriate for the

purpose of allowing Angela to live in a manner approaching her lifestyle during the marriage.

Finally, as to Darren's ability to pay, "[w]here a spouse does not have the ability to pay traditional spousal support, . . . none will be awarded." *Id.* at 412. On appeal, Darren implies that the only way he would be able to satisfy his spousal-support obligation would be to liquidate his agricultural assets. We readily reject this implication. Darren has characterized his financial situation as dire throughout these proceedings. Yet, in recent years, Darren has averaged just over $16,000.00 in annual voluntary contributions to his 401k plan. Furthermore, Darren has had enough disposable income throughout these proceedings to enable him to purchase Vanessa thousands of dollars' worth of jewelry. We reject Darren's argument that he is unable to pay.

Upon our consideration of the factors contained in section 598.21A(1), we find an award of traditional spousal support in favor of Angela is appropriate. As noted, Angela argues the award should be increased. She requests it be increased to an amount equal to thirty-one percent of the difference in the parties' annual incomes. *See Gust*, 858 N.W.2d at 412 (noting the court's prior approval of "spousal support where it amounts to approximately thirty-one percent of the difference in annual income between spouses"). However, the *Gust* court expressly noted that "we do not employ a mathematical formula to determine the amount of spousal support." *Id.* Accordingly, this court has stated its disbelief that *Gust* set a fixed percentage. *See In re Marriage of Larson*, No. 14-1333, 2015 WL 5965116, at *7 (Iowa Ct. App. Oct. 14, 2015). "It remains our duty imposed by our legislature to apply the statutory factors set forth in Iowa Code section 598.21A"—

"[t]he percentage applied in *Gust* is useful to allow a court to 'be in the ball park' but the percentage amount may still be 'out of left field' because of the factors set forth in section 598.21A." *Id.* The *Gust* percentage is nothing more than a "reasonable guide" and "useful tool to get us in the 'ballpark.'" *Id.* at *7–8; *see also In re Marriage of Fitzgerald*, No. 14-1729, 2015 WL 3625040, at *3 (Iowa Ct. App. June 10, 2015) (applying *Gust* percentage to get in the ballpark); *In re Marriage of Johnson*, No. 14-1271, 2015 WL 1848657, at *2 (Iowa Ct. App. Apr. 22, 2015) (same).

Upon our de novo review of the record, considering the factors contained in section 598.21A(1) and according the district court considerable latitude in its spousal-support award, we are unable to say the award fails to do equity between the parties. We therefore affirm the spousal-support award in favor of Angela in the amount of $500.00 per month.

E.      Child Support

As a preliminary matter, we agree with Darren that his child-support obligation should be recalculated to reflect he is not required to pay cash medical support, as the children were covered under his insurance at the time of trial. In addition, Darren argues the district court used an inequitable method for calculating his child-support obligation given the physical-care arrangement: Angela having physical care of JB2 and JB3 and the parties sharing physical care of JB1. He maintains the child support guidelines do not contemplate such a physical-care arrangement and proposes we apply a "primary and shared care blended" calculation recommended by Alft and Wilson Publishing.

We agree with Darren that the child support guidelines do not expressly contemplate this situation. In reviewing the language of Iowa Court Rule 9.14(4), concerning split or divided physical care, we find that provision is intended to apply to situations in which each parent has what is often referred to as primary physical care of at least one child, as opposed to joint physical care of at least one child.[5] Those circumstances are not present in this case.

The district court's calculation used rule 9.14(2) for the portion of child support attributable to JB2 and JB3 and rule 9.14(3) for the portion attributable to JB1. Using rule 9.14(3) for JB1, the court reached a net child-support obligation for Darren in the amount of $214.11. Using rule 9.14(2) for JB2 and JB3, the court reached a net child-support obligation for Darren in the amounts of $1125.42 when both children are eligible and $791.34 when only one child is eligible. The court then added the joint-physical-care obligation attributable to JB1 to the physical-care obligation attributable to both JB2 and JB3 to reach a child-support obligation in the amount of $1339.53 when all three children are eligible for child support.

---

[5] *See In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992) ("Split physical care refers to the separation of the children of the marriage between the parents [and] occurs when each parent has physical care of at least one child. This is not the same as divided physical care in which physical care is granted to one parent for a period of time and to the other parent for a period of time."); *compare* Iowa Code § 598.1(7) (defining physical care), *and In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007) ("[T]he parent with primary physical care has the responsibility to maintain a residence for the child and has the sole right to make decisions concerning the child's routine care."), *with* Iowa Code § 598.1(4) (defining joint physical care), *and In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007) ("If joint physical care is awarded, 'both parents have rights to and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, [and] providing routine care for the child.'" (alteration in original) (citation omitted)).

A recalculation under the current guidelines[6] including the cash medical support modification would amount to child support obligations for Darren in the amounts of $1353.03 for three children, $1183.60 for two children, and $821.71 for one child.[7]

Darren submitted with his proposed child support guidelines a printout from Alft and Wilson Publishing's website that proposed a calculation for "primary and shared care blended" physical-care arrangements. The printout provides examples for when there are two children, one under primary care and one under physical care; and four children, two under primary care and one under shared care. The "logic" section of that printout provided the following:

> The Child Support Guidelines Committee found that in shared custody cases, both parents bear an added burden of providing for the children that are in shared care. That doesn't change just because one parent might have primary care of 1 child while the parties have shared care of 5 children.
> The calculations in shared cases take into account these added costs by granting credit in the calculations. Look at the support grids at Rule 9.14(3) Guidelines, lines F and G.

---

[6] *See* Iowa Ct. R. 9.1 ("The child support guidelines contained in this chapter are hereby adopted, effective January 1, 2018. The guidelines shall apply to cases pending January 1, 2018."); *In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.2 (Iowa Ct. App. 1996) (noting pending cases for purposes of child support guidelines include those pending on appeal).

[7] In our calculation we use annual incomes in the amount of $95,046.33 for Darren and $47,022.48 for Angela. We then deduct $6000.00 in annual spousal support ($500.00 per month) for Darren and add the same for Angela. *See* Iowa Ct. R. 9.5(1)(a)(1). Neither party challenges the tax designations used by the district court, so we use those figures in our calculation—Darren filing as single and claiming no tax dependents and Angela filing as head of household and claiming one tax dependent as to the calculation for JB1; and Darren filing as single, Angela filing as head of household, and both parties claiming one tax dependent as to the calculation for JB2 and JB3. The record indicates the cost of the children's health insurance premium is $123.50. We attribute one-third of that amount ($41.17) to the calculation for JB1 and the remaining two-thirds ($82.33) to the calculation for JB2 and JB3. The amount of support for JB1 alone comes to $169.43. The amount of support for JB2 and JB3 comes to $1183.60 when both are eligible and $821.71 when only one remains eligible.

The first child in any primary support case is 75% or more of the burden when there are multiple children involved in a case. This can be shown by calculating child support as though there is only one child. Note the support amount then change the number of support children to 2. Compare the support result to the . . . support amount when only one child is involved. Increase the number of support children to 3. As you continue, you will find that each child after the first is a fraction of what the first child will cost in child support.

The calculation formula above takes this sliding scale out of the equation by making the value of each child equal. We have done so because of the nature of the parties sharing the care of some of the children. Without doing so, you would have a parent paying a hefty price of support for the primary care children while having the burden of sharing care of other children.

The examples decipher to the following steps for calculating the amount of child support under this method: (1) calculate the basic support obligation for all children involved including the cost of health insurance ($2387.00 + $123.50 = **$2510.50**); (2) divide that amount by the total number of children ($2510.50 / 3 = **$836.83**); (3) multiply that amount by the noncustodial parent's proportional share of income ($836.83 x .584216 = **$488.89**); (4) multiply that amount by the number of children in the physical care of one parent to reach the amount of support for those children ($488.89 x 2 = **$977.78**); (5) conduct a shared-physical-care calculation as to the number of children the parties will share physical care of (**$169.43**); (6) add the figures from steps four and five to reach the total support obligation (**$1147.21**). Under the current guidelines, this would result in a total child-support obligation for Darren in the amount $1147.21.[8]    After JB1 becomes ineligible for support,

---

[8] As to the physical-care calculation, we use the same financial information as above, calculate for three children with Angela filing as head of household and claiming two children and Darren filing as single and claiming one child. The basic support obligation for all three children ($2387.00) plus Darren's cost of health insurance ($123.50) amounts to $2510.50 in total support. That number is divided by three children to reach the amount attributable to each child, $836.83. That figure is then multiplied by Darren's proportional share of the income, 58.4216 percent, to reach Darren's obligation as to each physical-

Darren's obligation as to JB2 and JB3 would be governed by rule 9.14(2), which we have recalculated above to amount to $1183.60 for two children and $821.71 for one child.

Courts "should determine the amount of support specified by the guidelines." Iowa Ct. R. 9.4. As noted, the physical-care arrangement in this case is not contemplated by the guidelines, which do not provide for a method of computation under these unique circumstances. That leaves us with the primary purpose of the guidelines, which "is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3. Courts may adjust child support obligations "upward or downward . . . if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case." Iowa Ct. R. 9.4.

We are forced to decide between the method of computation urged by Darren at trial and that ultimately employed by the district court, neither of which are provided for in the guidelines. The only difference is the amount that is to be paid while JB1 is still eligible for child support, either $1353.03 or $1147.21. Considering the best interests of the children primarily, and justice between the parties secondarily, we choose to impose the former figure, $1353.03. Unquestionably, imposing the higher number will better provide for the needs of the children. Darren's primary complaint and the logic behind his proposed

care child, $488.89. That number is then multiplied by the number of physical-care children, here two, to reach Darren's obligation as to those children, $977.78. That number is then added to the shared-physical-care calculation discussed above, $169.43, to reach a total obligation of $1147.21.

calculation is that his obligation should be subsidized because he has to maintain a home for JB1. However, the record indicates that JB1 has spent more time in Angela's care than in Darren's care since the parties' separation. Furthermore, the record is clear Angela is much more willing to dedicate her resources, both physical and financial, to the children than Darren. As a result, the children are more likely to benefit from these swing funds if they are in Angela's pocket instead of Darren's. Finally, it does not make sense to us that Angela should receive more child support when she is providing for only two children than when she also participated in shared care of a third. We find the calculation we have chosen to employ in this case with very unique circumstances that are not governed by the child support guidelines is in the best interests of the children, which is our paramount consideration in dissolution proceedings involving children.

In conclusion, we find using the calculation employed by the district court, with adjustments to cash medical support and using the updated guidelines, is in the children's best interests and does justice between the parties. We modify the decretal child-support amounts to $1353.03 for three children, $1183.60 for two children, and $821.71 for one child.

Finally, Angela requests that we increase Darren's child-support obligation on appeal in light of new Iowa Court Rule 9.11A. Upon our de novo review of the record, we find Angela's request is not supported by substantial evidence and therefore deny the request.

F.      Allocation of Expenses for JB1

A joint physical care parenting plan should provide arrangements for the child's expenses in addition to court-ordered child support. *See* Iowa Code

§ 598.41(5)(a). In his post-trial motion to enlarge, Darren requested "further clarification and an outline of all expenses that will be shared equally between the parties." In her resistance, Angela requested any expenses to be split based on the parties' income. The district court subsequently ordered the parties to split expenses for JB1 on a pro-rata basis, with Darren paying sixty-one percent and Angela paying thirty-nine percent. On appeal, Darren argues, "There is no precedent for ordering the higher earning spouse to pay a greater percentage of the expenses for the child." However, Darren fails to cite to any authority that such a practice is prohibited. We consider the argument waived. *See* Iowa R. App. 6.903(2)(g)(3); *Ingraham v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this [issue] would require us to assume a partisan role and undertake the appellant's research and advocacy."). We affirm the district court's allocation of expenses for JB1

### G. Attorney Fees

Both parties challenge the district court's award of trial attorney fees in favor of Angela in the amount of $15,000.00. Darren maintains the award is excessive while Angela contends it is inadequate. "We review this award for an abuse of discretion." *See Sullins*, 715 N.W.2d at 255. This is our most deferential standard of review. *See State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). "Trial courts have considerable discretion in awarding attorney fees." *In re Marriage of Witten*, 672 N.W.2d 768, 784 (Iowa 2003) (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). The fees must be fair and reasonable and whether they should be awarded depends on the respective abilities of the parties to pay. *Id.* Upon our de novo review of this highly contentious litigation, we are unable to say

the district court abused its discretion in its attorney-fee award. We therefore affirm the award.

Angela also requests an award of appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In consideration of these factors, we decline to award appellate attorney fees to Angela. Costs on appeal are assessed equally between the parties.

## IV.     Conclusion

We affirm the district court's decree, but modify it in several respects. We modify the district court's decree to provide Darren shall be responsible for sixty-one percent and Angela shall be responsible for thirty-nine percent of the parties' tax liability resulting from the sale of farm assets for tax year 2016, with Angela's share paid by a reduction in the equalization payment due from Darren. We modify Darren's equalization payment to Angela to $173,706.46, as reduced by her share of the tax liability. We decline to increase the equalization payment upon Angela's argument that Darren dissipated the assets of the marital estate by purchasing jewelry for his girlfriend. We modify the decree by holding each party is entitled to substantially similar marital-share survivor benefits in one another's pensions. We affirm the spousal-support award in favor of Angela in the amount of $500.00 per month. We modify the decretal child-support amounts to $1353.03 for three children, $1183.60 for two children, and $821.71 for one child. We find Angela's

request that we increase Darren's child-support obligation on appeal in light of new Iowa Court Rule 9.11A is not supported by substantial evidence and therefore deny the request. We affirm the district court's allocation of expenses in addition to child support for the child under shared physical care. We affirm the district court's award of trial attorney fees and deny Angela's request for appellate attorney fees. Costs on appeal are assessed equally between the parties.

**AFFIRMED IN PART AND AFFIRMED AS MODIFIED IN PART ON APPEAL; AFFIRMED ON CROSS-APPEAL.**