# IN THE COURT OF APPEALS OF IOWA

No. 22-1550
Filed July 26, 2023

IN RE THE MARRIAGE OF HEATHER BAXTER GODBOLT
AND ELIJAH GODBOLT JR.

Upon the Petition of
HEATHER BAXTER GODBOLT,
        Petitioner-Appellee,

And Concerning
ELIJAH GODBOLT JR.,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Chad A. Kepros,

Judge.

        A husband appeals the economic provisions in the parties' dissolution

decree. **AFFIRMED AND REMANDED WITH DIRECTIONS.**

        Mark D. Fisher and Alexander S. Momany of Howes Law Firm, P.C., Cedar

Rapids, for appellant.

        Abigail L. Brown of Leff Law Firm, L.L.P., Iowa City, for appellee.

        Christine Boyer, Kids First Law Center, Cedar Rapids, for minor children.

        Heard by Bower, C.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Elijah Godbolt Jr. appeals the economic provisions in the parties' dissolution decree. We find the district court properly determined Elijah's earning capacity. We affirm the court's determination of his spousal support and child support obligations. We also find the court properly set out a visitation schedule for the parties. We affirm the court's division of marital property. In addition, we affirm the court's decision ordering Elijah to pay Heather Godbolt's trial attorney fees. We find Heather is entitled to appellate attorney fees and remand to the district court to determine a reasonable award of appellate attorney fees.

## I.     Background Facts & Proceedings

Elijah and Heather were married in 2010. They have four children, but only the youngest two children, born in 2009 and 2011, are minors. Heather filed a petition for dissolution of marriage on September 2, 2020.

An order on temporary matters, filed on November 18, provided that Heather would have physical care of the children. Elijah was granted visitation from 6:30 p.m. Wednesday until 8:00 p.m. Thursday each week and alternating weekend visitation from 7:00 a.m. Saturday until 8:00 p.m. Sunday, as well as alternating holidays. Elijah was ordered to pay temporary child support of $1674[1] and spousal support of $5000 each month. At that time, Elijah was employed as a sales manager at Billion Auto in Iowa City and Heather was unemployed.

---

[1] At the time of the order on temporary matters, three of the parties' children were minors. On June 24, the court determined Elijah's temporary child support obligation should be $1685 per month. One of the children had reached the age of eighteen since the time of the earlier temporary order, but taking into account other economic factors, Elijah's child support obligation increased.

On April 8, 2022, Heather filed an application for rule to show cause, alleging Elijah quit paying child support and spousal support in October 2021. Elijah was found to be in contempt of court for violating the temporary order. The court stated it "did not find Elijah credible in much of his testimony, and believes he has had the ability to make at least some payments towards his court ordered obligation." Elijah testified he was unable to work due to health problems, as he had two heart attacks. The court found, "[I]t sounds like he only went to the hospital in connection with one of these alleged heart attacks, and at the time was prescribed medication for anxiety and nausea." The court also stated, "Instead of not being able to work due to health reasons, it appears to the court that Elijah is attempting to use money as leverage to achieve his desired outcomes in this case." The court determined Elijah could purge the contempt by making the ordered temporary child support and spousal support payments. Elijah was ordered to pay Heather's attorney fees for the contempt proceedings.[2]

Prior to the dissolution trial, the parties stipulated to joint legal custody of the two minor children, with Heather having physical care. The parties also agreed to an alternating holiday visitation schedule. In addition, they agreed Heather would receive certain personal property from the marital residence, where Elijah was currently residing.

The dissolution trial was held on August 3 and 4.[3] At the time, Heather was forty-nine years old. She had a physical education degree, a physical therapy

---

[2] Elijah was also ordered to pay some of Heather's attorney fees as a discovery sanction.

[3] While the dissolution action was pending, Elijah filed a motion seeking to reduce his temporary child support and spousal support obligations, stating he had

assistant degree, an insurance license, and a real estate license, but had not worked in these areas. By the parties' agreement, Heather did not work outside the home for most of the marriage. She was the primary caretaker for the parties' four children.[4] At the time of the dissolution trial, Heather was employed as a special education paraeducator, earning $19,771 per year. She and the children lived in a three-bedroom townhouse.

At the time of the trial, Elijah was forty-six years old. Elijah worked as a sales manager at Billion Auto from 2013 to 2021. He earned between $178,363 to $326,527 while working there. Elijah was currently unemployed but stated he expected to find work soon and would be able to earn about $100,000 per year. Elijah claimed he had health issues but provided no evidentiary support for his assertions. Elijah also maintains several rental properties.

Heather presented evidence that the children experienced difficulties from visitation with Elijah and did not feel safe in his care. There was evidence that Elijah would consume alcohol and sometimes passed out or was sleeping when he was supposed to be caring for the children. There was also testimony that Elijah punched the youngest child in the stomach. The children have been

reduced income. Heather filed an application asking to reduce Elijah's visitation with the children. She stated that he frequently did not exercise his designated visitation time with the children. She also asserted that he had instability and alcohol issues. The parties subsequently stipulated that these issues should be determined as part of the dissolution decree and be given retroactive application to July 1, 2022.

[4] During much of the parties' marriage, Elijah worked away from home for six to eight weeks at a time, would return for about a week, then leave again for six to eight weeks.

diagnosed with post-traumatic stress disorder, generalized anxiety disorder, and depression. The children see a therapist.

The district court issued a dissolution decree for the parties on August 24. The court determined Elijah should participate in three family therapy sessions before continuing visitation with the minor children. Following this, Elijah was granted visitation each Wednesday from 6:00 p.m. to 8:00 p.m. and every other Sunday from 1:00 p.m. to 5:00 p.m. Elijah was directed not to drink alcohol at least twelve hours prior to or during each visit. If Elijah violated this provision, the visit would be cancelled.

The court averaged Elijah's income over a period of eight years and determined he had the ability to earn $215,000 per year. The court found Heather's earning capacity was the amount she was currently earning, $19,771 per year. Using these amounts, the court determined Elijah's child support obligation should be $1625.33 per month. The court also determined Elijah should pay spousal support of $3500 per month for seventy-two months, then $2500 per month for forty-eight months.

The court divided the parties' property to award Elijah the marital residence,[5] three vehicles, bank accounts in his possession, his retirement account, and business assets. Heather was awarded a vehicle, her bank accounts, and her retirement account. The court ordered the parties to sell three rental houses. Elijah was ordered to pay Heather a lump-sum cash payment of

---

[5] The court ordered that if Elijah did not timely pay the equalization payment or past-due support payments, the marital residence should be sold and these amounts would be paid to Heather from the proceeds.

$139,794 within ninety days. The court found Elijah should pay $25,000 of Heather's trial attorney fees. Elijah now appeals the dissolution decree.

## II. Standard of Review

We review dissolution of marriage decrees in equity. *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 50 (Iowa 1999). In equitable actions, our review is de novo. Iowa R. App. P. 6.907. "In such cases, '[w]e examine the entire record and adjudicate anew rights on the issues properly presented.'" *Knickerbocker*, 601 N.W.2d at 50–51 (alteration in original) (citation omitted). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

## III. Spousal Support

Elijah claims the district court should not have required him to pay spousal support to Heather. He asserts that he does not have the ability to pay spousal support and Heather does not have a need for the support.

"Our cases repeatedly state that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). The court considers the statutory factors in Iowa Code section 598.21A(1) (2020)[6] and

---

[6] The factors found in section 598.21A(1) are as follows:
   a. The length of the marriage.
   b. The age and physical and emotional health of the parties.
   c. The distribution of property made pursuant to section 598.21.

makes an equitable award of spousal support. *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 538 (Iowa 2022). We will disturb the district court's award of spousal support "only when there has been a failure to do equity." *Gust*, 858 N.W.2d at 406 (citation omitted).

An award of spousal support may come within the categories of rehabilitative, reimbursement, traditional, transitional, or a hybrid of these types. *Pazhoor*, 971 N.W.2d at 539–40. Transitional spousal support was recently recognized by the Iowa Supreme Court,

> Transitional alimony can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional alimony can be awarded to address that inequity and bridge the gap. We now formally recognize transitional alimony as another tool to do equity.

*Id.* at 542.

> "Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-

---

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" [*In re Marriage of Becker*, 756 N.W.2d [822,] 826 [(Iowa 2008)] (quoting [*In re Marriage of Francis*, 442 N.W.2d [59,] 63[ (Iowa 1989)]). It is awarded to help the recipient spouse become self-sufficient "and for that reason 'such an award may be limited or extended depending on the realistic needs of the economically dependent spouse.'" *Id.* (quoting *Francis*, 442 N.W.2d at 64).

*Pazhoor*, 971 N.W.2d 544.

"The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *Gust*, 858 N.W.2d at 408 (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) (en banc)). "[A]n award of traditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support at the lifestyle to which the party was accustomed during the marriage." *Id.* at 412.

*Pazhoor*, 971 N.W.2d at 543. Generally, only "marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Gust*, 858 N.W.2d at 410–11.

Reimbursement alimony "is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *Francis*, 442 N.W.2d at 64. Such award "should not be subject to modification or termination until full compensation is achieved. Similar to a property award, but based on future earning capacity rather than a division of tangible assets, it should be fixed at the time of the decree." *Id.* It is distinguishable from rehabilitative or traditional alimony because reimbursement alimony "is designed to give the 'supporting' spouse a stake in the 'student' spouse's future earning capacity, in exchange for recognizable contributions to the source of that income—the student's advanced education." *Id.* at 63.

*Pazhoor*, 971 N.W.2d at 544.

Elijah contends the court imputed an income to him that is not supported by the record. He states the court should have calculated his average income from

2006 to 2019,[7] rather than from 2013 to 2021. He states his average income from 2006 to 2019 is $126,702. At the dissolution hearing, Elijah testified he could earn at least $100,000 per year.

Where a parent has fluctuating income, the court may calculate an average income for the parent. *See In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005). "When income is subject to fluctuation, an average income over a reasonable period of time should be used." *In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996). "In determining the income of a person who has fluctuating monthly income, 'it generally is best to use an average of income from a period that accurately reflects the fluctuations in income.'" *In re Marriage of Anglin*, No. 06-0028, 2006 WL 2419125, at *2 (Iowa Ct. App. Aug. 26, 2006) (quoting *In re Marriage of Robbins,* 510 N.W.2d 844, 846 (Iowa 1994)).

The district court averaged Elijah's income over an eight-year period. The district court found

> Elijah has the earning capacity for support purposes of $215,000, which is slightly less than the average income Elijah has earned over the past eight years. While the eight-year average includes his higher, more recent earnings, it also includes the earnings in lesser years, including those years in which he was a new salesman. Elijah may exceed his eight-year average of income in the future, but the Court finds that the eight-year average best captures the uncertainty of what opportunities Elijah will have and the expected fluctuations in a profession where Elijah is largely compensated with commissions and bonuses.

---

[7] Elijah states he had unusually high income in 2020 and 2021 due to the pandemic and the court should not have included those years in its calculations. He states that most car dealerships did not have adequate inventory for the number of people wanting to buy cars, and due to the pandemic car dealerships were unable to get more cars. He asserts that because Billion Auto had a larger inventory than many dealerships, it was able to sell more cars, leading to an increase in his income. He states that he would not expect to have the income he had in 2020 or 2021 in subsequent years.

The court did not follow Elijah's request to average his income over a thirteen-year period or to exclude those years where he earned the most money. The income imputed to Elijah was within the permissible range of the evidence. *See In re Marriage of Ruba*, No. 19-0365, 2019 WL 6358439, at *4 (Iowa Ct. App. Nov. 27, 2019) (finding the income imputed to a parent "was within the permissible range of evidence presented at trial"); *In re Marriage of Ohm*, No. 10-1079, 2011 WL 944879, at *6 (Iowa Ct. App. Mar. 21, 2011) (finding the district court's imputed income to a party "was within the permissible range of the evidence"). We affirm the district court's finding that Elijah's earning capacity was $215,000 per year.

Elijah also contends Heather can support herself based on her physical education degree, physical therapy assistant degree, insurance license, and real estate license. The court found Heather never worked as a teacher and never received her teaching certification. Additionally, she never worked as a physical therapist and was never certified. Heather only sold insurance for a short period of time based on referrals from Elijah and no longer held an insurance license. Heather never sold real estate and stated she had no interest in that area. The court noted that Heather's current job "allows her to work a schedule consistent with the children's school schedule." The court concluded, "[I]t is not realistic to assume a greater earning capacity for Heather at least over the short term in determining support obligations." We agree with the district court's determination that Heather's earning capacity is the amount she was currently earning, $19,771 per year.

The district court awarded Heather what it characterized as "a blend of traditional spousal support and transitional spousal support." The court found Heather "will never earn anywhere near the income in which Elijah has enjoyed and which the family has depended on." The court found, however, that she could increase her income over time. The court concluded Elijah should pay spousal support of $3500 per month for seventy-two months and then $2500 per month for an additional forty-eight months.

We will disturb the district court's award of spousal support "only when there has been a failure to do equity." *Gust*, 858 N.W.2d at 406. Elijah has the ability to earn a much greater income than Heather. By the parties' agreement, for many years, Elijah was the sole wage-earner while Heather cared for the parties' children. We find the award of spousal support is equitable under the facts of this case. Based on recent case law and considering the goals of the respective types of alimony, we determine that this award of varying amounts over a period of ten years is more of a hybrid of traditional and rehabilitative rather than a hybrid of traditional and transitional.[8] Regardless of our disagreement with the nomenclature of the type of alimony, we believe that the district court's determination of the length and amounts of spousal support does equity between the parties and we do not disturb the amount or length of the award.

---

[8] We recognize the time limitation that the supreme court has placed on transitional alimony. *See In re Marriage of Sokol*, 985 N.W.2d 177, 187 (Iowa 2023) ("Because transitional spousal support is focused on solving a short-term liquidity issue, a transitional spousal support award generally should not exceed one year in duration."); *see also Hettinga*, 574 N.W.2d at 922 ("An alimony award will differ in amount and duration according to the purpose it is designed to serve.").

## IV.    Child Support

Elijah contends the district court improperly deviated from the child support guidelines by using his earning capacity rather than his actual earnings in calculating his child support obligation. *See* Iowa Ct. R. 9.11(4). During the dissolution hearing, however, Elijah did not argue that his child support should be based on his income while he was unemployed. The child support worksheet submitted by Elijah assumed he had future earnings of $100,000 per year. Elijah also testified that he had the ability to earn "at least $100,000" per year. We determine Elijah conceded that his child support obligation should be based on his earning capacity.[9]

Elijah also claims the district court did not accurately calculate his child support obligation. Similar to his claim regarding spousal support, Elijah contends the court imputed too much income to him and not enough income to Heather. "In applying the child support guidelines, the court must determine the parents' current

---

[9] On appeal, Elijah cites rule 9.11(4)(d), which states,

> The court may not use earning capacity instead of actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.

The district court found,

> Unfortunately, Elijah elected to be voluntarily unemployed since October of 2021, which resulted in him not paying his court-ordered temporary support obligations, and leaves the Court in a position at trial of determining Elijah's earning capacity for purposes of spousal support and child support rather than making determinations based on actual income.

Even if Elijah had not conceded that his earning capacity should be used to determine his child support obligation, we conclude the district court made an adequate written finding to support the use of Elijah's earning capacity, as required by rule 9.11(4)(d).

monthly income from the most reliable evidence presented." *In re Marriage of Hart*, 547 N.W.2d 612, 615 (Iowa Ct. App. 1996) (citing *In re Marriage of Powell,* 474 N.W.2d 531, 534 (Iowa 1991)). In determining each parent's income, the court carefully considers all of the relevant circumstances. *In re Marriage of Miller*, 532 N.W.2d 160, 162 (Iowa Ct. App. 1995).

The district court considered all of the relevant circumstances in finding Elijah was capable of earning $215,000 per year, based on an average of his income over the past eight years. *See id.* Furthermore, the court considered Heather's employment history and determined Heather's earning capacity was the amount she was currently earning, $19,771 per year. We affirm the district court's decision that Elijah should pay $1625.33 per month in child support for the two minor children.

### V.      Visitation

**A.**      The children experienced difficulties during visitation with Elijah under the temporary order. The children began to see a therapist and have been diagnosed with post-traumatic stress disorder, generalized anxiety disorder, and depression. There was evidence Elijah yelled at the children and punched one of the children in the stomach. Heather testified the children were afraid of Elijah and did not feel safe in his care. The children's therapist "opined that it is possible that a positive relationship could be built between each child and Elijah, but that it would take time and substantial work." She stated that family therapy would be helpful.

During the dissolution hearing, Elijah agreed to attend family therapy to assist in his relationship with the children. He stated he was willing to participate "to support my family."

In the dissolution decree, the district court ruled:

> **A.** <u>Family Therapy</u>. As agreed by the parties, Elijah shall participate with the children in family therapy. The children's therapist, Lynda Topp, has agreed to assist in arranging family therapy with Elijah and the children, which may include her in addition to another therapist and may also include Heather if appropriate. Elijah's initial in-person contact with the children following entry of this decree will be limited to contact during family therapy sessions. It is the Court's hope that family therapy sessions can occur once every week or two, but the ultimate scheduling of family therapy sessions will depend on the availability of the parties and the therapists. Family therapy will continue so long as it is beneficial.
>
> **B.** <u>Weekends</u>. Once Elijah has participated in three family therapy sessions with the children, he will have the children every other Sunday from 1:00 p.m. until 5:00 p.m.
>
> **C.** <u>Midweek</u>. Once Elijah has participated in three family therapy sessions with the children, he will have midweek visitation each Wednesday from 6:00 p.m. until 8:00 p.m.

On appeal, Elijah contends the court improperly made visitation contingent upon participating in family therapy. He states the court gave control of his visitation to the family therapist because his visitation is contingent on the availability of the therapist.

We have stated that a court cannot delegate its authority to modify a visitation schedule to another entity, such as a therapist. *In re Marriage of Stephens*, 810 N.W.2d 523, 530 (Iowa Ct. App. 2012). "[T]he district court is the only entity that can modify a custody or visitation order, subject to the review of the appellate courts." *Id.* (citing *In re Marriage of Brown*, 778 N.W.2d 47, 54 (Iowa Ct. App. 2009)). However, a court may "seek and consider the therapist's recommendations." *Id.* at 531.

We find the language of the parties' dissolution decree did not improperly delegate the court's authority to a therapist. The court set out a specific number

of family therapy sessions Elijah needs to attend before the visitation schedule is in effect. Therefore, Elijah's visitation is not subject to the actions or recommendations of the therapist. "[A] self-executing graduated visitation arrangement that fosters rebuilding parent-child relationships may be in the best interests of a child." *In re Marriage of Lyga*, No. 21-0156, 2022 WL 108951, at *3 (Iowa Ct. App. Jan. 12, 2022).

 **B.** Elijah claims he should have been awarded more visitation time with the children. Elijah points out that under the temporary order he was receiving visitation every Wednesday from 6:30 p.m. until Thursday at 8:00 p.m. and alternating weekend visitation from 7:00 a.m. Saturday until 8:00 p.m. Sunday. In the dissolution decree, Elijah was granted visitation each Wednesday from 6:00 p.m. to 8:00 p.m. and every other Sunday from 1:00 p.m. to 5:00 p.m.

 Generally, liberal visitation with the noncustodial parent is in the children's best interests. Iowa Code § 598.41(1)(a); *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). "The feasible exercise of a parent's right of visitation should be safeguarded by a definite provision in the order or decree of the court awarding custody of the child to another person." *Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966) (citation omitted); *see also In re Marriage of Kanetomo*, No. 19-2008, 2020 WL 5650593, at *4 (Iowa Ct. App. Sept. 23, 2020). "The legislature has granted to the court the responsibility to make an impartial and independent determination as to what is in the best interests of the child . . . ." *In re Marriage of Schmidt*, No. 13-0675, 2014 WL 2432549, at *7 (Iowa Ct. App. May 29, 2014) (quoting *Stephens*, 819 N.W.2d at 530-31).

In fashioning a visitation schedule, the trial court's goal and duty is to do equity and achieve a fair and appropriate result. Even though our review is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity. *See Vonnahme v. Stephenson*, No. 00-0193, 2001 WL 57595, at *3 (Iowa Ct. App. Jan. 24, 2001). "This deference to the trial court's determination is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit." *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). A trial court has a certain range of discretion within which to fashion a visitation order, as long as the order provides for visitation that is equitable and reasonable under the particular facts and circumstances. *See Vonnahme,* 2001 WL 57595, at *3.

Based on the problems experienced by the children under the visitation provisions in the temporary order, we find the court properly created a visitation schedule in the dissolution decree that is in the children's best interests. The children were diagnosed with complex post-traumatic stress disorder relating to trauma they experienced. We note that under the decree the parties may agree in writing to additional visitation time. The decree also provides, "If Elijah takes the steps to address his own issues and his relationship with the children, the Court anticipates that he will have periods of expanded additional visitation, but the Court

cannot project if or when that will occur at this time." We affirm the parties' visitation schedule.[10]

### VI.    Property Division

Elijah claims the district court inequitably divided the parties' property. "[C]ourts equitably divide all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). Property is divided "in an equitable manner in light of the particular circumstances of the parties." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). "An equitable distribution of marital property, based upon the factors in [section] 598.21(5), does not require an equal division of assets." *In re Marriage of McDermott*, 827 N.W.2d 671, 682 (Iowa 2013)

---

[10] In *In re Marriage of Jenkins*, our court noted that conditions relating to the sobriety of a parent are disfavored. No. 22-0656, 2023 WL 382301, at *3 (Iowa Ct. App. Jan. 25, 2023). "Such conditions are disfavored, in part, because they permit the other parent to improperly restrict visitation." *Id.* (citing *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994)). There were concerns that Elijah was drinking alcohol while he had the children in the his care and, at times, fell asleep or passed out while he was supposed to be supervising the children. During the dissolution hearing, Elijah agreed not to drink alcohol while the children were in his care. He also agreed to abstain from alcohol for a number of hours before the children were with him.

The dissolution decree provides:
> Elijah shall not consume alcohol in any amount for a period of at least 12 hours before having visitation with the children, nor shall he consume alcohol in any amount during any of his visitations with the children. Elijah is affirmatively obligated to immediately advise Heather if he consumes alcohol in violation of the terms of this paragraph. If Elijah consumes alcohol in any amount in violation of this paragraph, that visitation period will be canceled if it has not already commenced or will immediately cease if it has already commenced.

During oral arguments, Elijah clarified that he was not challenging this provision of the decree. We consider any issue regarding alcohol restrictions to be waived.

(quoting *In re Marriage of Kimbro,* 826 N.W.2d 696, 703 (Iowa 2013)). We ordinarily will not disturb the district court's ruling unless it fails to do equity. *See In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998).

The district court ordered Elijah to pay a lump-sum cash payment of $139,794 within ninety days. Elijah claims he should not have to pay this amount. He contends that while the court used the fair market value of the parties' marital residence, $700,000, and a property they rented out, $406,000, the court failed to account for the liabilities against the properties. He states the marital residence has a net value of $155,408 and the rental property has a net value of $78,008. Elijah argues that if the liabilities are considered, he should not have to pay a lump-sum cash payment or the amount should be reduced to $46,683.

The dissolution decree includes Attachment "B," a document setting out the value of the assets awarded to each party, including liabilities. Attachment "B" shows Elijah was awarded a net distribution of $300,224.42. Our review of the court's calculations shows the court properly subtracted the liabilities associated with the properties awarded to Elijah in concluding he was awarded a net amount of $300,334.42. Heather was awarded a net distribution of $20,636.91. The court ordered Elijah to pay Heather $139,794, giving him a total amount of $160,430.42 and Heather $160,430.91. We conclude the lump-sum cash award is equitable. *See Keener*, 728 N.W.2d at 193 (stating the division of property should be equitable).

Elijah additionally contends that the district court improperly ruled that for the marital residence and the rental property:

> If Elijah does not pay the cash equalization payment . . . , pay all past due spousal support, child support, and health care expenses, and refinance all liens against the property to remove Heather from liability, within ninety (90) days of the entry of the decree, the property shall be immediately listed for sale . . . and sold.

If the properties were sold, Elijah's past due spousal support, child support, and medical support obligations would be paid from the proceeds.

Elijah argues this contingency was inequitable and contrary to his rights of ownership. He asserts that he should have been awarded the properties outright, then if he failed to pay the lump-sum cash award within ninety days, Heather could apply to the court and the court could order the properties sold. Elijah already had past due spousal support, child support, and medical support obligations. The onus should not be on Heather to take further action if he additionally failed to pay the lump-sum cash payment.

And the court could have ordered the properties sold at the time of the dissolution decree. *See In re Marriage of Crosby*, 699 N.W.2d 255, 256–57 (Iowa 2005) (noting the district court ordered the sale of the marital residence); *In re Marriage of Erickson*, 553 N.W.2d 905, 907 (Iowa Ct. App. 1996) (finding the district ordered the payment of certain debts from the proceeds of the sale of the marital residence). We determine the court did not act inequitably by giving Elijah ninety days to seek financing to pay his debts but stating that if he did not make the payments within ninety days, the marital residence and rental property would be sold.

### VII. Attorney Fees

**A.** Elijah asserts the district court abused its discretion by ordering him to pay Heather's trial attorney fees. The court ordered Elijah to pay $25,000 of

Heather's trial attorney fees, which amounted to approximately half of Heather's trial attorney fees. "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). The district court's decision is reviewed for an abuse of discretion. *Id.*

On this issue, the district court stated:

There is no basis whatsoever for Elijah's request for attorney fees from Heather, and his request for the same only further undercuts his credibility. There is a basis for Heather's request for attorney fees from Elijah. Elijah has a vastly superior earning capacity than Heather. He has been the primary income earner throughout the entirety of the marriage. . . . Critically, it is readily apparent that Elijah's unreasonable positions, failure to provide information that only he can provide, and obfuscation of facts, has substantially increased the attorney fees incurred by Heather. Elijah's failure to provide basic information and his obfuscation of facts has made the entirety of trial and decision-making substantially harder and more complex than it need be. Heather is not entitled to recover all of the attorney fees she incurred, but an award of $25,000 of her attorney fees is entirely reasonable and will be ordered by the Court.

We conclude the district court did not abuse its discretion by ordering Elijah to pay a portion of Heather's trial attorney fees. The court considered the relative abilities of the parties to pay attorney fees.

**B.** Heather seeks attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (quoting *Sullins*, 715 N.W.2d at 255). Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, we consider "the needs of

the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted).

We determine Heather is entitled to appellate attorney fees. Heather does not have the earning capacity to pay her own appellate attorney fees. Elijah has a superior earning capacity and has the ability to pay Heather's attorney fees. Additionally, Heather was required to defend the district court's decision on appeal. But Heather has not submitted an affidavit of appellate attorney fees. We conclude the issue of appellate attorney fees should be remanded to the district court to determine a reasonable award of appellate attorney fees. *See In re Marriage of Fricken*, 989 N.W.2d 669, 675 (Iowa Ct. App. 2023); *In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021).

**AFFIRMED AND REMANDED WITH DIRECTIONS.**